KELSEY-HAYES COMPANY, Plaintiff-Appellant, *v.* MICHAEL J. HOWLETT, Secretary of State, Defendant-Appellee.

First District (2nd Division)   No. 77-854

Opinion filed August 29, 1978.

M. M. Loman, of Chicago, for appellant.

William J. Scott, Attorney General, of Chicago (Karen Konieczny, Assistant Attorney General, of counsel), for appellee.

Mr. JUSTICE PERLIN delivered the opinion of the court:

Plaintiff, Kelsey-Hayes Company, brought an action under section 1 of the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, par. 264 *et seq.*) to review a decision by the Illinois Secretary of State, Michael J. Howlett. Defendant had upheld the forced registration of two out-of-State vehicles belonging to plaintiff for failure to display valid reciprocity plates and prorate decals as required by section 3—701(2) of the Illinois Vehicle Code. (Ill. Rev. Stat. 1973, ch. 95½, par. 3—701(2).) The trial court affirmed this ruling.

In this appeal plaintiff contends that the aforementioned administrative decision was against the manifest weight of the evidence and that the

hearing officer abused his discretion when he failed to take into consideration the mitigating circumstances demonstrated by plaintiff. Plaintiff also argues that defendant's action of impounding the two trucks with their cargo was a harsh and unconscionable method to accomplish registration where there existed a reciprocity agreement between the two parties.

The facts in this matter are not in dispute. Plaintiff, a corporation located in Elkhart, Indiana, owned a fleet of eight truck-tractors, all of which were licensed in that State. On or about March 14, 1974, plaintiff entered into an agreement with defendant for reciprocity registration of its fleet in Illinois and paid the required fees therefor. (See Ill. Rev. Stat. 1973, ch. 95½, par. 3—402(B).) In mid-September of that same year the corporation obtained three new trucks. Two of the trucks on the original reciprocity application had been traded in for new models. On September 24, 1974, the controller of plaintiff corporation contacted defendant and requested that these three new trucks be added to the reciprocity registration. Defendant responded to this request on September 30, 1974. In this letter defendant advised plaintiff that the fee for transferring the prorate decals from the two units, which had been traded in, to two of the new trucks was $2 per unit. However, prior to receipt of defendant's written response, the controller became ill, was hospitalized and subsequently did not return to work until the 23rd or 24th of October 1974. The controller testified that because of this lengthy absence there was a large backload of work when he returned to the corporation, and that he did not act on defendant's letter immediately because he decided to complete other work which he deemed to have a higher priority. On December 20, 1974, two of the aforesaid trucks were stopped at a weigh station in Collinsville, Illinois. Upon discovery that they did not display any Illinois registration, defendant's agents impounded the two vehicles and arrested the drivers. Defendant then informed plaintiff corporation that the drivers and trucks would not be released until the company paid a flat weight tax of $1,492 per vehicle for use of the public highways under the Class V designation. (Ill. Rev. Stat. 1973, ch. 95½, par. 3—815(a), truck weight of 64,001 lbs. to 73,280 lbs.) Later that same day the controller wired $2,984 to defendant in order to gain the release of the truck drivers and the tractors.

After a hearing on plaintiff's request for a refund of this sum, defendant found that the vehicles in question were operating on the highways of Illinois on December 20, 1974; that both units lacked the proper authority to use said highways on that date; and that each vehicle weighed 73,280 pounds. Defendant concluded that plaintiff had violated section 3—701(2) of the Illinois Vehicle Code by having knowingly permitted these trucks to use Illinois highways without the proper registration, and it held

that the circumstances cited by plaintiff to account for its failure to register the two vehicles were insufficient to warrant reversal of the forced registration because the company's controller "had two (2) months [after he returned from his illness] to properly register the units * * *." For these reasons defendant affirmed the forced registration and refused to refund the amount paid for such registration.

We shall note at the outset that in approaching the problem of administrative review, it is not the duty of this court to weigh the evidence, but rather its duty is to ascertain whether the findings and decision of the administrative agency are contrary to the manifest weight of the evidence. (See *Kerr v. Police Board* (1974), 59 Ill. 2d 140, 141-42, 319 N.E.2d 478, 479.) If it is determined that the findings and decision are against the manifest weight of the evidence, then they will be set aside. (*Kreiser v. Police Board* (1st Dist. 1976), 40 Ill. App. 3d 436, 441, 352 N.E.2d 389, 393, *aff'd* (1977), 69 Ill. 2d 27, 370 N.E.2d 511.) However, in order to reach such a determination, this court must be satisfied that an opposite conclusion is clearly evident. *Kelly v. Police Board* (1st Dist. 1975), 25 Ill. App. 3d 559, 564, 323 N.E.2d 624, 627.

The Illinois Vehicle Code (Ill. Rev. Stat. 1973, ch. 95½, par. 1—101 *et seq.*) is a comprehensive legislative enactment whose primary purpose is to regulate the flow of vehicular traffic on the public roads of this State. Defendant is vested with the power and duty of administering this code. (Ill. Rev. Stat. 1973, ch. 95½, par. 2—101.) Section 3—402 requires that, subject to certain exceptions, all vehicles when driven or moved upon a highway must be registered with defendant. (Ill. Rev. Stat. 1973, ch. 95½, par. 3—402.) Reciprocity is one of the aforementioned exceptions to this requirement. In this regard the Illinois Vehicle Code grants defendant broad power to enter into reciprocity agreements with sister States. (Ill. Rev. Stat. 1973, ch. 95½, par. 3—402(B).) Pursuant to such an agreement, a vehicle registered in another State need not obtain Illinois license plates, provided that the foreign State grants similar privileges to Illinois vehicles. (Ill. Rev. Stat. 1973, ch. 95½, par. 3—402(B)(3)(a)(b); see *Bode v. Barrett* (1952), 412 Ill. 204, 106 N.E.2d 521, *aff'd* (1953), 344 U.S. 583, 97 L. Ed. 567, 73 S. Ct. 468.) However, out-of-State vehicles must be registered in Illinois pursuant to the terms of the reciprocity agreement and must display a valid reciprocity plate and prorate decal. (Ill. Rev. Stat. 1973, ch. 95½, par. 3—701(2). See also *Blue Arrow Douglas, Inc. v. Howlett* (1st Dist. 1977), 54 Ill. App. 3d 230, 233, 369 N.E.2d 272, 275.) Section 3—402(B)(2)(d) provides in part:

> "B. Reciprocity. Any motor vehicle, trailer, semitrailer or pole trailer need not be registered under this Act provided the same is operated interstate and in accordance with the following

provisions and any rules and regulations promulgated pursuant thereto: * * *

(2) Any motor vehicle, trailer, semitrailer and pole trailer operated interstate need not be registered in this State, provided: * * *

(d) that such vehicles shall display thereon any reciprocity permit or plate which may be required by the Secretary of State pursuant to rules and regulations which the Secretary of State may promulgate in the administration of this Act, in the public interest." Ill. Rev. Stat. 1973, ch. 95½, par. 3—402(B)(2)(d).

As was stated previously in the recitation of the facts, defendant's investigator indicated in his report that plaintiff's trucks had no Illinois reciprocity plates or prorate decals when they were stopped at the Collinsville Weigh Station. Plaintiff stipulated to this fact. Under such circumstances, we feel that defendant's finding of a violation of section 3—701(2) is supported by adequate evidence. (See, *e.g., Blue Arrow Douglas, Inc. v. Howlett.*) Since it has been established that plaintiff's trucks failed to display the necessary reciprocity registration while using the public highways of this State, we must also conclude that defendant's agents acted properly when, following the discovery of this fact, they impounded the two vehicles and arrested the drivers. Certainly, defendant is authorized to stop and detain vehicles which do not display the proper registration. Without such power, defendant would be unable to enforce the registration provisions of the Illinois Vehicle Code. See Ill. Rev. Stat. 1973, ch. 95½, par. 2—101; see generally Ill. Rev. Stat. 1973, ch. 95½, par. 2—104.

However, in determining whether a particular finding is against the manifest weight of the evidence, we believe we should take into consideration the severity of the sanction by the administrative agency. (*Res v. Civil Service Com.* (4th Dist. 1977), 49 Ill. App. 3d 852, 855, 365 N.E.2d 209, 212. Contra, *Epstein v. Civil Service Com.* (1st Dist. 1977), 47 Ill. App. 3d 81, 84, 361 N.E.2d 782, 785.) After having reviewed the present factual situation, we believe that in this particular instance the hearing officer abused his discretion by imposing a sanction which was overly harsh in view of the mitigating circumstances. The record reveals that prior to this incident plaintiff had properly registered its fleet of trucks for operation in Illinois by entering into a reciprocity agreement with defendant and by paying the appropriate fees. Because the fleet was properly registered and because two older tractors were being removed from this registration, plaintiff was obligated only to pay a total fee of $4 to add two of the newly purchased trucks to this reciprocal agreement. It is true that for a period of approximately two months after he returned to

work at the plaintiff corporation, the controller failed to send the requisite transfer fees to defendant. However, the controller testified that because his backload of work was very great when he returned from his illness, he attended to the most pressing matters first and that he did not attach a great deal of importance to defendant's written request for the $2 fees since other States had customarily billed the corporation for similar transfer fees. In view of these uncontradicted facts, we feel it is clearly evident that the imposition of a total flat weight tax of $2,984, where a $2 transfer fee per vehicle would normally be called for, is grossly unfair. (See generally *Evansville-Vanderburgh Airport Authority District v. Delta Airlines, Inc.* (1972), 405 U.S. 707, 715, 31 L. Ed. 2d 620, 92 S. Ct. 1349; *Mansfield v. Carpentier* (1955), 6 Ill. 2d 455, 462, 129 N.E.2d 166, 170.) This conclusion is also supported by the fact that defendant is empowered to issue one-trip permits for periods up to 72 hours upon payment of a $12 fee.[1] (See Ill. Rev. Stat. 1973, ch. 95½, pars. 3—403(a), 3—811(d).) We believe that the issuance of such a temporary permit, in addition to compelling payment of the transfer fees, would have been a much more reasonable requirement under these circumstances. It would have allowed plaintiff's trucks to proceed uninterrupted to their destination since it is likely that both truck drivers would have been able to pay a fee of $14 for their respective vehicles. Furthermore, it would have assured that the State would receive its transfer fees and a fee for one unauthorized use of its highways.

Since defendant determined that plaintiff's tractors each weighed 73,280 pounds, the fee per truck would be $12.

For the foregoing reasons, the judgment of the circuit court is reversed and the cause is remanded to the Secretary of State with directions to remove the flat weight tax of $2984 and apply the transfer and one-trip permit fees of $28.

Reversed and remanded with directions.

STAMOS, P. J., and BROWN, J., concur.

---

[1] The one-trip permits are authorized by section 3—403(a). However, the fees for such permits are prescribed by section 3—811(d). This section states in relevant part:
"One-trip permits may be obtained for an occasional single trip by a vehicle as provided in this Act, upon payment of the following fees:

| Maximum Gross Weight | Fee |
| --- | --- |
| Up to 36,000 lbs. | $ 8 |
| More than 36,000 lbs. and up to 50,000 lbs. | 10 |
| More than 50,000 lbs. and up to 73,280 lbs. | 12" |