DONALD CARTWRIGHT, Plaintiff-Appellee, v. ILLINOIS CIVIL SERVICE COMMISSION et al., Defendants-Appellants.

First District (1st Division)    No. 79-83

Opinion filed January 28, 1980.

William J. Scott, Attorney General, of Chicago (Joseph D. Keenan, III, Assistant Attorney General, of counsel), for appellants.

Jacob Pomeranz, of Cornfield and Feldman, of Chicago, for appellee.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Defendants Civil Service Commission, State of Illinois, and Department of Corrections, appeal from a complaint for administrative review that reversed the Commission's decision to discharge plaintiff Donald Cartwright. Plaintiff was in charge of security at the Stateville Correctional Center and was discharged, after a hearing, for failing to reprimand a guard who placed a choke hold on an unruly resident of the institution. The Commission discharged plaintiff even though the hearing

officer recommended a 60-day suspension. On admininstrative review, the trial court ordered that plaintiff be reinstated with no loss of benefits. Defendants appealed.

On appeal, defendants argue that the trial court erred in concluding (1) that plaintiff should have appeared before the Employee Review Board rather than the Inquiry Board; (2) that charge IV was not written with sufficient clarity to inform plaintiff of the charge against him; (3) that plaintiff's discharge was not warranted; and (4) that the hearing officer's conclusion that plaintiff was not guilty of charge III was contrary to the manifest weight of the evidence.

We affirm.

Plaintiff Donald Cartwright was the chief of security II at the Stateville Correctional Center in Joliet from July 1, 1975, to June 10, 1977. As chief of security, plaintiff was responsible for security within the cell blocks.

During January of 1977, Stateville was the scene of prisoner unrest and violence. On January 10, two prison guards were stabbed, one fatally. As a result, Warden Brierton placed the institution under "lock up." Further disturbances occurred, precipitating a decision to transfer some of the more troublesome inmates to other institutions. The transfer was scheduled for January 16.

On January 16, the inmates to be transferred were taken from their cells and brought to a staging area on the ground floor. There they were placed in a line and moved into waiting buses. Overseeing the transfer were Warden Brierton, Assistant Wardens Kapture and Wallenstein, and plaintiff.

The first inmate brought to the staging room was John Withers. He was upset at being transferred. After being handcuffed to the transfer chain, he began strenuously objecting. After several minutes of such conduct, Warden Brierton ordered that Withers be taken off the chain and placed in the washroom located in the room. Captain Stokes removed Withers from the chain, placed a "choke hold" on him, and placed him in the washroom. Witnessing the incident were Warden Brierton, Assistant Warden Kapture, plaintiff, and others.

Exactly what transpired inside the washroom is disputed. Assistant Warden Kapture later testified that plaintiff walked into the washroom and struck Withers with an open palm. Plaintiff denied ever striking Withers. Warden Brierton testified that he did not observe plaintiff strike Withers, although there was evidence that he did not have a clear view of the washroom.

Subsequently, an investigation was conducted in connection with alleged inmate beatings that occurred during the January 10-16, 1977,

period. On June 10, 1977, plaintiff was presented with the following written charges:

"1. On January 15, 1977, Chief of Security Cartwright did use unnecessary force against resident Delbert Wooten. In that, Chief of Security struck resident Wooten with a Black Jack without proper justification. This is in violation of Administrative Regulation #803.

2. On January 15, 1977, Chief of Security Cartwright did use unnecessary force against resident Reginald Mosby. In that, Chief of Security Cartwright entered the resident's cell and struck the resident without proper justification. This action is in violation of Administrative Regulation #803.

3. On January 16, 1977, Chief of Security Cartwright did use unnecessary force against Residents John Withers and Noffey Hollands. In that, while resident Withers was physically restrained by other staff, Chief of Security Cartwright struck the resident in the area of the head. In addition, Chief of Security Cartwright struck resident Hollands during the same incident. Both incidents were without proper justification and is in violation of Administrative Regulation #803.

4. On January 16, 1977, Chief of Security Cartwright did condone the use of unnecessary force against residents John Withers and Noffey Hollands. In that, Chief of Security Cartwright, who was the chief security officer at the institution, did not restrain and/or attempt to restrain subordinate staff from striking the residents while knowing these actions were in violation of Administrative Regulation #803."

On June 13, 1977, plaintiff requested a hearing before defendant Civil Service Commission to determine whether cause existed for his discharge. On June 21, 1977, plaintiff filed a motion to dismiss the charges. He argued that contrary to administrative rule 220, he had not been accorded a hearing before the employee review board prior to the issuance of the charges against him. Defendant Commission replied that plaintiff was provided, however, with an opportunity to answer the charges before the newly created inquiry board, even though the regulation creating the board had not yet become effective at the time of plaintiff's appearance. Subsequently, plaintiff's motion to dismiss was denied and a hearing was held.

On March 2, 1978, the hearing officer issued his findings. Of the four charges, he found only charge IV to have been proved. Specifically, he found that:

"(7) The evidence is sufficient to persuade the Hearing Officer that Respondent Cartwright did fail in his duty to reprimand or

otherwise take appropriate disciplinary action against Captain Stokes for his unjustified application of force against resident Withers on January 16, 1977. The evidence shows that Stokes used excessive and unjustifiable force against resident Withers when Stokes used a choke hold against the handcuffed smaller man to take him from the chain to the washroom."

As appropriate punishment, the hearing officer recommended that plaintiff be suspended for 60 days. Defendant Commission, however, discharged plaintiff instead.

Plaintiff then filed a complaint for administrative review. After hearing argument, the trial court reversed the Commission's decision and ordered plaintiff reinstated with no loss of benefits. Defendants appeal.

On appeal, defendants first argue that the trial court erred in concluding that plaintiff should have been accorded a hearing before the employee review board prior to the issuance of the charges against him. Defendants argue that plaintiff suffered no prejudice as a result of his appearance before the inquiry board and that, therefore, the order for discharge should have been upheld.

We do not feel that the alleged error was sufficient to warrant a reversal. The inquiry board was specifically created to replace the employee review board. This was deemed necessary because members of the employee review board might include employees who were also the subject of the same investigation as plaintiff. So that impartiality would be achieved, the inquiry board was created. Its membership was limited to employees from other institutions within the State. However, relying on *Service v. Dulles* (1957), 354 U.S. 363, 1 L. Ed. 2d 1403, 77 S. Ct. 1152, and noting that plaintiff appeared before the inquiry board 13 days *before* the regulation creating it became effective, the trial court concluded that the inquiry board was without authority to hear the case.

In *Sun Oil Co. v. Federal Power Com.* (5th Cir. 1958), 256 F.2d 233, the court stated:

"* * * an administrative agency is not a slave of its rules. *National Labor Relations Board v. Grace Co.*, 8 Cir., 1950, 184 F.2d 126. Ad hoc changes may be made and, in proper cases, may be applied retroactively. *National Labor Relations Board v. National Container Corp.*, 2 Cir., 1954, 211 F.2d 525. In a particular case an administrative agency may relax or modify its procedural rules and its action in so doing will not be subjected to judicial interference in the absence of a showing of injury or substantial prejudice." (256 F.2d 233, 239.)

See also *Saint Francis Memorial Hospital v. Weinberger* (N.D. Cal. 1975), 413 F. Supp. 323. Among the other considerations that enter into the resolution of whether to grant retroactive effect to a newly adopted

administrative regulation are: whether the case is one of first impression, whether the regulation represents an abrupt departure from well-established practice, the extent to which the party against whom the new regulation is applied relied on the former regulation, and the degree of burden imposed on that party. (*Retail, Wholesale and Department Store Union v. NLRB* (D.C. Cir. 1972), 466 F.2d 380; *Lodges 743 and 1746, International Association of Machinists v. United Aircraft Corp.* (2d Cir. 1975), 534 F.2d 422.) Further modification of administrative regulation is particularly appropriate when prompted by unique or emergency situations. In *American Farm Lines v. Black Ball Freight Service* (1970), 397 U.S. 532, 25 L. Ed. 2d 547, 90 S. Ct. 1288, the Supreme Court enunciated the general rule that:

> " '* * * [i]t is always within the discretion of a court or an administrative agency to relax or modify its procedural rules adopted for the orderly transaction of business before it when in a given case the ends of justice require it. The action of either in such a case is not reviewable except upon a showing of substantial prejudice to the complaining party.' " 397 U.S. 532, 539, 25 L. Ed. 2d 547, 553, 90 S. Ct. 1288, 1292.

■ Applying these principles to the present case, it is clear that a retroactive application of the regulation creating the inquiry board was proper. Because of the widespread allegations of employee misconduct at Stateville, defendants determined that the employee review board could not function as an impartial tribunal since some of its members might also be under investigation. In order to serve better the ends of justice, defendant Commission properly exercised its discretion and abolished the employee review board through the creation of the inquiry board.

It is especially clear that plaintiff was not substantially injured or prejudiced as a result of his appearance before the inquiry board. The functions of the inquiry board and the employee review board were similar. Both bodies allowed plaintiff to appear and answer the charges against him; neither afforded him the right to cross-examine witnesses. However, rights usually associated with adjudicatory proceedings generally do not apply to these types of fact-finding investigations. *Hannah v. Larche* (1960), 363 U.S. 420, 4 L. Ed. 2d 1307, 80 S. Ct. 1502.

Plaintiff relies on *Service v. Dulles* (1957), 354 U.S. 363, 1 L. Ed. 2d 1403, 77 S. Ct. 1152, for the proposition that due process requires that an administrative agency comply with its own rules and regulations when applicable. However, as noted above, administrative agencies are not slaves to their rules, and in proper cases, rules may be modified and given retroactive effect. Further, *Service* is distinguishable from the present case. In that case, the director attempted to bypass completely regulations pertaining to the investigation of employee misconduct, prior to

their discharge. Service was discharged without the benefit of the hearing to which he was entitled. Such was not the case here.

Defendants next argue that the trial court erred in concluding that charge IV was not drawn with sufficient clarity to inform plaintiff of the nature of the charge against him.

■ We find defendants' argument without merit. Plaintiff was specifically charged with failing to restrain subordinates from *striking* residents. He was discharged for failing to reprimand Captain Stokes for placing a choke hold on Mr. Withers. While it is true that the charges filed before an administrative agency need not be drawn with the same refinements and subtleties as pleadings in a court of law, it is essential that the respondent be reasonably apprised of the charges so that he can intelligently prepare his defense. (*Wierenga v. Board of Fire & Police Commissioners* (1976), 40 Ill. App. 3d 270, 352 N.E.2d 322.) Here the act with which plaintiff was charged was entirely different from the act for which he was subsequently discharged. This case is quite different from *Sudduth v. Board of Fire & Police Commissioners* (1964), 48 Ill. App. 2d 194, 198 N.E.2d 705, where the respondent was charged with attempting to commit suicide by taking an overdose of seconal but later discharged for "excessive use of seconal". The court upheld the discharge since respondent was on notice that he was going to be confronted with evidence that he took seconal, thus still enabling him to prepare his defense. This cannot be said of the present case where nothing in charge IV indicated that plaintiff would confront evidence concerning his alleged failure to reprimand Captain Stokes for placing a choke hold on Withers. We believe this charge was properly dismissed.

Defendants next argue that the trial court erred in reversing the order discharging plaintiff on the grounds that the facts did not warrant his discharge.

■ We disagree. In determining whether an administrative finding is contrary to the manifest weight of the evidence, consideration should be given to the sanction imposed. (*Kelsey-Hayes Co. v. Howlett* (1978), 64 Ill. App. 3d 14, 380 N.E.2d 999.) In the present case, the trial court concluded that defendant Commission improperly disregarded the hearing officer's recommendation that plaintiff be suspended for 60 days. After having reviewed the facts in the case, we too, believe that defendant Commission abused its discretion by imposing a sanction that was overly harsh in view of the mitigating circumstances. Here plaintiff's only error was in failing to reprimand a subordinate for a questionable act. We note that three of plaintiff's superiors also witnessed the incident and did not question Captain Stokes' handling of the unruly Withers. Further, there is nothing in the record to indicate Withers complained of the way he was treated or that he was subjected to any pain or

discomfort. Under these facts we cannot conclude that plaintiff's conduct warranted his discharge.

Finally, defendants argue that the hearing officer's determination that plaintiff was not guilty of the acts alleged in charge III was contrary to the manifest weight of the evidence.

Again, we disagree. Findings of an administrative agency on questions of fact are *prima facie* correct and will be overturned only if contrary to the manifest weight of the evidence. (Ill. Rev. Stat. 1977, ch. 110, par. 274; *Fenyes v. State Employees' Retirement System* (1959), 17 Ill. 2d 106, 160 N.E.2d 810.) Decisions that are arbitrary or capricious will also be overturned. (*Holiday Inns, Inc. v. Pollution Control Board* (1975), 27 Ill. App. 3d 704, 327 N.E.2d 364.) It is not the function of a reviewing court, however, to reweigh the evidence or redetermine the credibility of witnesses after an administrative decision has been made. (*Daley v. Jack's Tivoli Liquor Lounge, Inc.* (1969), 118 Ill. App. 2d 264, 254 N.E.2d 814.) Charge III alleged that plaintiff struck both inmates Withers and Hollands. Though Assistant Warden Kapture testified that he saw plaintiff strike Withers on the top of the head after being placed in the washroom, no one else witnessed the incident. The hearing officer found this unusual, since others were in the vicinity. Plaintiff denied striking Withers and Withers did not testify to the specific incident. As a result, we cannot conclude that the hearing officer's determination that plaintiff was not guilty of charge III was contrary to the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

O'CONNOR and CAMPBELL, JJ., concur.