ARTHUR LETOURNEAU *et al.*, Plaintiffs-Appellees, v. THE DEPARTMENT OF REGISTRATION AND EDUCATION *et al.*, Defendants-Appellants.

First District (3rd Division) No. 1—88—3823

Opinion filed April 3, 1991.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Deborah L. Ahlstrand, Assistant Attorney General, of Chicago, of counsel), for appellants.

Carr & O'Rourke Associates, of Chicago (Donald A. Carr and Roland P. Ernst, of counsel), for appellees.

JUSTICE WHITE delivered the opinion of the court:

Defendants appeal from a judgment entered by the circuit court of Cook County that reversed the revocation of plaintiffs' licenses to practice. We affirm the judgment of the circuit court.

Defendants are the Department of Registration and Education (the Department), now known as the Department of Professional Regulation; Gary L. Clayton (the Director), who was Director of Registration and Education at the pertinent times; the Illinois Private Detective, Private Alarm, and Private Security Board (the Board); and the Board's chairman, and five other members.

One plaintiff is Arthur Letourneau, to whom the record sometimes refers as Arthur LeTourneau. The other plaintiffs are the detective division, the security division, and the alarm division of Investigations International (the company). Of the four licenses and certificates revoked, two licenses (as a private detective and a private security contractor) were issued in Letourneau's name, and two certificates (as a private detective agency and as a private security contractor

agency) were issued to Letourneau in the names of the company's detective division and security division, respectively. For convenience when referring collectively in this opinion to plaintiffs' licenses and certificates, the general term "licenses" is used.

A certificate as a private alarm contractor agency, issued in the name of the company's alarm division, and a license as a private alarm contractor, issued in Letourneau's name, were neither revoked nor involved in the disciplinary proceedings, but as licensees the holders thereof have joined as plaintiffs.

The central issue is whether revocation of plaintiffs' licenses was contrary to the manifest weight of the evidence, unsupported by substantial evidence, or arbitrary and unreasonable.

### I. STATUTORY BACKGROUND AND PROCEDURAL HISTORY

Under the Private Detective, Private Alarm, and Private Security Act of 1983 (Ill. Rev. Stat. 1985, ch. 111, par. 2651 *et seq.*) (the Act or the present Act), a licensee is subject to disciplinary sanctions for enumerated violations. (Ill. Rev. Stat. 1985, ch. 111, par. 2672(a).) A range of sanctions, including license revocation, is provided. Ill. Rev. Stat. 1985, ch. 111, par. 2675.

In this cause, the Department filed formal charges seeking disciplinary action against Letourneau and the company as respondents. The charges named Letourneau and the company's detective and security divisions as holders of the licenses in question. The charges alleged three substantive acts or omissions, said to constitute violations of the Act or of its precursor statute (the 1933 Act) (Ill. Rev. Stat. 1983, ch. 111, par. 2601 *et seq.*) (repealed eff. Jan. 5, 1984)[1] and therefore to constitute grounds for license revocation or suspension under section 22 of the Act (Ill. Rev. Stat. 1985, ch. 111, par. 2672). The alleged violations were:

---

[1]Plaintiffs received their licenses under the present Act by derivation from previous licensure under the 1933 Act. (See Ill. Rev. Stat. 1985, ch. 111, par. 2656.) Plaintiffs have made no issue of whether derivative licenses may be revoked on account of any breached present obligation of derivative licensees not to have violated the 1933 Act, even though nonderivative licensees arguably have no such present obligation. Thus, we may deem any such issue waived. Supreme Court Rules 341(e)(7), (f) (113 Ill. 2d Rules 341(e)(7), (f)). But compare Ill. Rev. Stat. 1985, ch. 1, pars. 1001, 1101, 1103 (unless contradicted by terms of particular statute, general rule is that identical new statutory provisions continue old ones and that new law is not construed as repealing old law for purposes of offenses or claims under old) with Ill. Rev. Stat. 1985, ch. 111, par. 2656 (derivative licensees have "same rights and obligations" as nonderivative licensees).

(a) Failure by the company since 1979 to register its employees with the department, in violation of section 10b(4) of the 1933 Act and section 15(c) of the present Act (Ill. Rev. Stat. 1983, ch. 111, par. 2622(4); Ill. Rev. Stat. 1985, ch. 111, par. 2665(c)).

(b) Practice by the company as "a detective" while its "license" was nonrenewed from 1977 to October 1983, said to be in violation of section 3 of the 1933 Act (Ill. Rev. Stat. 1983, ch. 111, par. 2603).[2]

(c) Practice by Ernest Rizzo since 1979 as a detective for the company despite a 1978 revocation of his detective license, in violation of sections 16(b) and (f) of the 1933 Act and sections 22(a)(3), (a)(14), (a)(15), and (a)(19) of the present Act (Ill. Rev. Stat. 1983, ch. 111, pars. 2628(b), (f); Ill. Rev. Stat. 1985, ch. 111, pars. 2672(a)(3), (a)(14), (a)(15), (a)(19)).

▪ Under the version of the Act applicable to this cause, it was a continuing requirement for agency certification such as here that the agencies each have a full-time Illinois-licensed private detective or private security contractor in charge and that each such person reside in Illinois. (Ill. Rev. Stat. 1985, ch. 111, pars. 2664(d), (f).) "Residency" meant having established an actual domicile in Illinois for at least one year. (Ill. Rev. Stat. 1985, ch. 111, par. 2652(m).) The 1933 Act contained similar requirements for detective agencies. (Ill. Rev. Stat. 1983, ch. 111, pars. 2601, 2621.) The present Act has now been amended to repeal the requirement that a licensee in charge reside in Illinois. See Pub. Act 85–981, art. III, §5, eff. Jan. 1, 1988 (amending Ill. Rev. Stat. 1985, ch. 111, pars. 2664(d) through (f)).

During several sessions between January and July 1986, a hearing officer received testimony from 11 witnesses and admitted 75 exhibits

---

[2]If the *company* was operating without a certificate of authority as a detective *agency*, the operation violated section 3a of the 1933 Act (Ill. Rev. Stat. 1983, ch. 111, par. 2604) rather than section 3. However, the Director's eventual finding of fact was that both Letourneau and the company had practiced without licensure as a private detective and a detective agency, respectively—which in Letourneau's case did violate section 3. The Director's conclusion of law was merely that Letourneau violated section 3, the company going unmentioned.

Because plaintiffs have made no issue of variances between the formal charges and the findings of fact and conclusions of law, the question may be deemed waived. But see *Bruce v. Department of Registration & Education* (1963), 26 Ill. 2d 612, 620, 187 N.E.2d 711, 715-16 (respondent entitled to notice of charges that must be met); *Jim M'Lady Olds, Inc. v. Secretary of State* (1987), 162 Ill. App. 3d 959, 961-62, 516 N.E.2d 346, 347-48 (same).

into evidence. Attending from time to time and sometimes participating in the proceedings were several members of the Board. On January 22, 1987, the Board made and submitted its written findings of fact, conclusions of law, and recommendation that the licenses at issue be revoked. See Ill. Rev. Stat. 1985, ch. 111, par. 2674(d).

The Board's factual findings were:

Letourneau had been a Florida resident since at least 1980 and, while holding the licenses at issue, had falsely reported to the Department since 1980 that he was an Illinois resident.

Letourneau and the company had practiced as a detective and detective agency from October 1977 to October 13, 1983, and from January 4, 1984, to January 7, 1985, without a license and without registering employees.

Letourneau and the company had since at least 1980 allowed Ernest Rizzo to practice as a detective without a license or supervision.

Letourneau and the company had practiced as a security contractor and security contractor agency from January 4, 1984, to January 7, 1985, without registering employees.

The Board's legal conclusion was that Letourneau had violated the sections of the present Act and of the 1933 Act that he and the company were charged with violating.

Letourneau filed a motion for rehearing, but the Director denied it. Adopting the Board's findings of fact, conclusions of law, and recommendation, he then ordered that the licenses at issue be revoked.

On April 28, 1987, Letourneau filed his complaint for administrative review in the circuit court of Cook County, seeking to have the Director's revocation orders vacated. After briefing and argument, the court entered an order on August 10, 1988, reversing the Department's revocation decision.

The trial judge stated that he was reversing the revocation orders because the findings of fact were without substantial foundation in the evidence. Specifically, the judge found that there was no evidence to support the Director's finding that Letourneau had been a Florida resident since 1980 and that there was evidence that Letourneau had been an Illinois resident at the times in question. The judge also found that there was no evidence to support the Director's finding that Letourneau had allowed Rizzo to practice as an unlicensed private detective and that the Department's evidence in general was not strong enough to support the result of revocation. At a hearing on defendants' motion for reconsideration, the judge again stated that there was insufficient evidence to support the Director's findings of fact

and conclusions of law. Accordingly, he denied the motion for reconsideration, and this appeal followed.

This opinion will refer to matters of evidence as required for discussion of the issues.

## II. ANALYSIS

### A. STANDARD FOR REVIEWING FINDINGS OF FACT

■ In reviewing the factual determinations made by the Director, this court is limited to ascertaining whether his decision accorded with the manifest weight of the evidence and was supported by substantial evidence. *Massa v. Department of Registration & Education* (1987), 116 Ill. 2d 376, 385, 507 N.E.2d 814, 818; *Bruce v. Department of Registration & Education* (1963), 26 Ill. 2d 612, 622, 187 N.E.2d 711, 717; *Irving's Pharmacy v. Department of Registration & Education* (1979), 75 Ill. App. 3d 652, 658, 394 N.E.2d 627, 632.

■ The findings and conclusions of an administrative agency regarding questions of fact are to be considered *prima facie* true and correct. (Ill. Rev. Stat. 1989, ch. 110, par. 3–110; *Murdy v. Edgar* (1984), 103 Ill. 2d 384, 391, 469 N.E.2d 1085, 1088.) However, this does not mean that a court should automatically approve an agency decision merely because the agency heard witnesses and made findings. *Viera v. Illinois Racing Board* (1978), 65 Ill. App. 3d 94, 99, 382 N.E.2d 462, 466.

### B. LETOURNEAU'S RESIDENCY

Defendants appear to regard Letourneau's residency as being relevant for two reasons, either of which might support disciplinary action.

First, as the sole individual to whom the company's agency licenses were issued, Letourneau (or some person employed by him) was required to be in charge of agency operations as a full-time, individually licensed Illinois resident, and failure to comply would violate the law. (See Ill. Rev. Stat. 1985, ch. 111, pars. 2664(d), (f); Ill. Rev. Stat. 1983, ch. 111, par. 2621.) Letourneau employed no such person; the question is whether Letourneau himself met the requirement.

■ Second, Letourneau was required to avoid fraud or material deception in connection with licensure and to report his correct address and practice location to the Department (Ill. Rev. Stat. 1985, ch. 111, pars. 2671(a), 2672(a)(1); Ill. Rev. Stat. 1983, ch. 111, pars. 2616, 2628(a)); according to defendants, failure to report a Florida residence would violate the law.

However, though the Department's briefs discuss such residency questions at length, its formal charges never clearly specified violation of either of these residency-related requirements. The only formal charge that even arguably might be read as pertaining to one or both of them was the charge that Rizzo had unlawfully practiced as a detective for the company.

Despite any deficiencies in the formal charges, one of the Director's findings of fact was that Letourneau had been a Florida resident who falsely reported Illinois residency—thereby presumably violating the requirements that he report his correct address and avoid fraud or material deception (see Ill. Rev. Stat. 1985, ch. 111, pars. 2671(a), 2672(a)(1)). And one of the Director's conclusions of law was that Letourneau had permitted his license to be used by an unlicensed person in order to operate without Letourneau's supervision or control (see Ill. Rev. Stat. 1985, ch. 111, par. 2672(a)(15))—which comes close to saying that Letourneau violated the requirement that he keep a full-time Illinois-licensed individual who resides in Illinois in charge of his agencies (see Ill. Rev. Stat. 1985, ch. 111, pars. 2664(d), (f)).

The implication of defendants' treatment of the residency question is that Letourneau's nonresidency, failure to report a correct address, failure to keep a full-time licensed resident in charge, and facilitation of Rizzo's unlicensed practice are actually all of a piece in common sense, and all unlawful under one statutory section or another. For the additional reason that plaintiffs make no issue of any incongruity in formal charges, findings of fact, and conclusions of law, Letourneau's alleged nonresidency is treated in this opinion as if it had been duly framed as a violation from the outset.

Defendants point to testimony by Letourneau's business partner and two alleged former employees (who testified under grants of immunity) that they never saw Letourneau in Illinois during the period in question. Defendants also point to evidence that departmental investigators were never able to find Letourneau at his Illinois addresses, that the company maintained a Florida office, and that Florida had issued detective licenses to an Arthur Letourneau. From this, defendants argue that they were entitled to use their expertise regarding normal conduct of a licensee in order to infer that Letourneau was not an Illinois resident.

Though Ernest Rizzo (whom, according to the formal charges, Letourneau had helped to engage in unlicensed practice) testified that he had known Letourneau for 20 years and that Letourneau was an Illinois resident, defendants argue that they were entitled to judge Rizzo's credibility adversely because of his failure to explain adequately a

number of past actions and statements suggestive of unlicensed practice. In addition, defendants point to the testimony of one witness, a longtime Letourneau acquaintance, that he had dined with Letourneau in Florida in 1983 and that Letourneau, in the witness' words, had then "indicated" that he was a Florida resident.

Documentary evidence in the form of mail and utility bills shows Illinois addresses for Letourneau, but defendants argue that the addresses were actually Rizzo's. As a fact from which an adverse inference can be drawn, defendants point to Letourneau's refusal to answer questions at the administrative hearing on grounds of potential self-incrimination after the Department's counsel had referred to the possibility of criminal charges. Accordingly, defendants contend that the finding of Letourneau's nonresidency in Illinois was not against the manifest weight of the evidence.

In reply, besides referring to evidence already noted, plaintiffs point to other evidence that Letourneau was an Illinois resident. The Department's investigator testified that he saw a license on the wall at an address previously stated by Letourneau to be his own. The Department's investigators testified that mailboxes bearing Letourneau's name and containing mail addressed to him existed at addresses given by Letourneau. Responses in Letourneau's name were received by the Department, after it had sent mail to Letourneau at his Illinois address, though defendants contend that the responses either did not bear Letourneau's personal signature at all or bore discrepant personal signatures. Letourneau also appeared before Illinois notaries public.

In the circuit court, the trial judge referred to the need for "facts established by evidence, *** evidence that is understood in law as being evidence." He continued:

"This is not a case which turns on the weight of the evidence or the credibility of the witnesses, quite frankly.

This is a case which must be reversed I believe because the findings are without substantial foundation in the evidence. A case by the state cannot be made from inferences, from presumptions, or from suspicions, or from indirect evidence. They have to be made by evidence that's credible, and sufficiently strong to warrant the result that is reached. There is no strong evidence here to support the result of revocation of Letourneau's license."

After referring to the Department's grant of immunity to its witnesses, the trial judge remarked:

"The only basis for the conclusion that Mr. Letourneau resides in Florida is that one witness had dinner with Mr. Letourneau once in Florida in 1983 I believe, and yet the charge is that he lived there since 1980. That same witness said I hadn't seen him around, and I had dinner with him in '83. The fact that that witness had not seen Letourneau in Illinois does not mean that Letourneau resided in Florida during all of that hiatus."

The trial judge acknowledged the evidence of Florida detective licenses in the name of an Arthur Letourneau but stated:

"I am not sure that this Mr. Letourneau is the only Arthur Leto[ur]neau in the USA, and there was no attempt to demonstrate the Arthur Letourneau in Florida is the Arthur Letourneau that we are talking about here in Illinois.

So there clearly is no evidence to support the finding *** that Letourneau has lived in Florida since 1980."

The judge then referred to evidence that Letourneau had received mail in his Illinois mailbox, was paying utility bills in Illinois, had registered his automobile in Illinois, and had responded to department notices mailed to Illinois. The judge also cited Rizzo's testimony that Letourneau lived in Illinois:

"Clearly the department is free to ignore Mr. Rizzo's testimony, but I find it incredible that they would ignore that testimony and accept testimony from someone who said he had dinner with Mr. Letourneau in Florida and give greater weight to the latter while giving no weight to the former."

■■ ■ Defendants were entitled to draw reasonable inferences from the evidence. (*Raymond Concrete Pile Co. v. Industrial Comm'n* (1967), 37 Ill. 2d 512, 517, 229 N.E.2d 673, 676.) In an administrative proceeding, defendants could also, in conjunction with other evidence, draw an inference adverse to Letourneau from his refusal to testify on grounds of potential self-incrimination. (*Giampa v. Illinois Civil Service Comm'n* (1980), 89 Ill. App. 3d 606, 613-14, 411 N.E.2d 1110, 1116.) If the issue is merely one of conflicting testimony and a witness' credibility, the administrative agency's determination should be sustained. (*Keen v. Police Board* (1979), 73 Ill. App. 3d 65, 70-71, 391 N.E.2d 190, 195.) An administrative agency may properly base its decision on circumstantial evidence. *Ritenour v. Police Board* (1977), 53 Ill. App. 3d 877, 882-83, 369 N.E.2d 135, 139.

In finding "no" evidence of Letourneau's nonresidency, the trial judge overlooked testimony that, in what may have been admissions against interest (see *Cox v. Daley* (1981), 93 Ill. App. 3d 593, 596-97, 417 N.E.2d 745, 748), Letourneau had said in about 1979 that he

planned to move to Florida and had "indicated" in 1983 that he was now a Florida resident. In any event, the Department presented what it contends was circumstantial evidence of Letourneau's Florida residency: the Florida licenses, inability to find him in Illinois, accumulation of several weeks' worth of mail in a mailbox, identity between Letourneau's claimed Illinois addresses and Rizzo's addresses, irregularities in Letourneau's purported signature on answers to mail sent to him at Illinois addresses, and the adverse inference from Letourneau's refusal to testify on the question of his residency.

Although the trial judge erred in concluding that there was no evidence that Letourneau had lived in Florida since 1980, the question remains whether the evidence offered by the Department sufficiently supported the Director's decision so that the decision can be said not to have been against the manifest weight of the evidence.

■ Defendants have not cited and we have not found any requirement that one must be a Florida resident in order to be licensed as a detective in that State, so the mere fact of Florida licensure would carry relatively little weight even if plaintiff were shown to have been the Florida licensee.

The Act did not expressly require the person in charge of a private detective agency always to remain within Illinois; all it required was that the person in charge be a resident of this State and be a "full-time Illinois licensed private detective." (See Ill. Rev. Stat. 1985, ch. 111, par. 2664(d).) Assuming that Letourneau did spend some time in Florida, such a fact is not substantial evidence that he thereby gave up Illinois residency, that while he was in Florida his Illinois agency operations actively continued without him, or that he was thereby prevented from being as much a "full-time Illinois licensed" individual as any other licensee who took vacations or went on trips out of State. The fact that departmental investigators failed to find Letourneau but found his mail in the mailbox is evidence that he was absent; it falls short of being substantial evidence that he was nonresident.

Assuming that any connection between Rizzo and Letourneau was lawful, a coincidence between Letourneau's Illinois addresses and Rizzo's is of little probative value. Any relationship between Letourneau and Rizzo in the nature of business association, friendship, or employment (unless of a type prohibited by the Act) is substantial evidence neither of Letourneau's nonresidency nor of his facilitation of unlicensed practice by Rizzo.

Letourneau would ordinarily have had a right to appoint someone his agent for signing documents; thus, purported irregularities in his signature are not substantial evidence of nonresidency. Because Le-

tourneau's refusal to testify can lead to an adverse inference only in conjunction with other evidence (*Giampa*, 89 Ill. App. 3d 606, 411 N.E.2d 1110), the lack of other substantial evidence impairs the probative value of his refusal. And, given the other evidentiary short-comings, a naked assertion of departmental expertise in judging licensees' conduct amounts to *ipse dixit*.

If the Department had produced substantial evidence on the residency issue and it were simply a matter of weighing that evidence against Letourneau's or of judging the credibility of witnesses, the presumption of correctness in the Director's findings would prevail over mere disagreements by plaintiffs or even by this court. However, as did the circuit court, we believe that no substantial evidence supported the Director's finding of Letourneau's Florida residency and false statements of Illinois residency.

Still, the matter does not end here. The parties agree that the most serious charge against Letourneau was that he permitted the use of his agency certificates by Rizzo in order for Rizzo to engage in unlicensed practice. Thus, we must address the sufficiency of the Director's findings on that issue.

### C. RIZZO'S ACTIVITIES

Defendants point to considerable evidence as proving that Letourneau permitted Rizzo to use Letourneau's licenses and thus to operate without being licensed himself.

Repeated coincidences were demonstrated between Rizzo's address and those of Letourneau and the company. Letourneau, accompanied by Rizzo, had once attempted to obtain an agency certificate in the name of Ernest D. Rizzo, Ltd. In addition, Rizzo had contacted the Department in behalf of Letourneau to discuss an agency name change and what kind of work Rizzo (whose license had been revoked) could now permissibly do for the company. Insurance procured by Letourneau was carried in Rizzo's name until corrected after departmental rejection. Checks payable to Rizzo had been deposited to the company's account. Rizzo signed purchase papers as owner of cars purchased by the company.

Raymond Rocke, testifying under a grant of immunity, said he had performed security work for the company under Rizzo as "boss." Though Rizzo testified that the witness was working without authority and was discharged by Letourneau, the testimony was impeached by Letourneau's certification to the Department that the witness had been an employee after the "discharge." Rizzo also attempted to explain such matters as his deposition testimony that he was employed

by the company, a magazine account of investigations he supposedly was conducting as a company subcontractor without being licensed, and a telephone director advertisement for the company that carried Rizzo's name. Defendants argue that the credibility of Rizzo's explanations was simply judged adversely.

In addition, Letourneau refused to answer questions about Ed Rossi, whom he had listed as an employee and whose name the department contended was an alias for Rizzo. Rizzo matched the age and physical description of Rossi, and his social security number was a slightly transposed version of Rossi's. Rizzo acknowledged having used the name Ed Ross.

■■ But plaintiffs respond that no witness, not even Rocke, testified to personal knowledge that since 1980 Rizzo had actually engaged in activities legally constituting practice as a private detective. One witness testified to Rizzo's having told him that Rizzo planned to be an employee but not a principal of a company to be formed by Letourneau. Rizzo himself denied having practiced as a detective in Illinois since 1978 or 1979.

Defendants contend that, despite Rizzo's denial of practicing as a detective, he admitted that he had investigated Rocke, ascertained the address and business of another person, conducted electronic sweeps to discover surveillance devices, and conducted "investigations for pay" on cases for Letourneau's attorney. However, these contentions by defendants lack force, because none of the described activity, unless it is part of a paid investigation, legally constituted practice as a private detective—except possibly, of course, for the very conduct of "investigations for pay." (See Ill. Rev. Stat. 1985, ch. 111, par. 2652(h).) As for the latter conduct, the most to which Rizzo's testimony admitted was serving a subpoena and checking for wiretaps at the attorney's request, apparently for pay in both cases. Neither serving a subpoena nor checking for a wiretap, even for pay, was itself necessarily practice as a private detective; it would only have been so if part of a paid investigation made to obtain information regarding several subjects specified by statute. (See Ill. Rev. Stat. 1985, ch. 111, par. 2652(h).) There was no testimony that Rizzo's admitted activity was part of any such statutorily specified investigation, much less that it was performed by use of Letourneau's licenses.

The Director was entitled to judge the credibility of witnesses and to draw inferences from the evidence. However, the evidence offered to prove Rizzo's unlicensed practice did not constitute the substantial evidence required by law on what was admittedly the most serious charge against Letourneau. Thus, the circuit court correctly rejected

the Director's finding that Letourneau had permitted Rizzo to practice without a license by using Letourneau's licenses.

### D. OTHER DISPUTED FACTUAL POINTS

Defendants extensively discuss their contention that the Director's findings regarding practice on inactive licenses and regarding nonregistration of employees should not have been reversed by the circuit court. Plaintiffs reply at length. Yet, the circuit court never "reversed" the Director's findings on these issues.

The circuit court's order as drafted by plaintiffs' counsel did read that "the Court, having found no evidence to support *the findings* entered by the Department, orders that the Decision of the Department revoking the licenses of Arthur Letourneau be and is hereby reversed." (Emphasis added.) However, the transcript reveals that the court focused entirely on the lack of substantial evidence for the findings on residency and on allowing Rizzo's unlicensed practice. Because of that lack, the court declared that "the decision by the department therefore is arbitrary and constitutes an abuse of the department's discretion. For all of these reasons the decision is reversed."

It is evident that the circuit court based reversal on the residency and Rizzo issues and on no other. We need not consider the Director's findings and conclusions on other issues if his reversible findings on the residency and Rizzo issues were so central as to render his revocation decision an abuse of discretion.

### E. LICENSE REVOCATION

■■ An agency's exercise of discretion may be set aside if it was arbitrary or unreasonable or clearly violated the rule of law. (*Commonwealth Edison Co. v. Illinois Commerce Comm'n* (1988), 180 Ill. App. 3d 899, 907, 536 N.E.2d 724, 729.) The courts will not reweigh the evidence but will determine whether the final administrative decision is just and reasonable in light of the evidence presented. *Davern v. Civil Service Comm'n* (1970), 47 Ill. 2d 469, 471, 269 N.E.2d 713, 714; *Sircher v. Police Board* (1978), 65 Ill. App. 3d 19, 20-21, 382 N.E.2d 325, 327.

The applicable rule, as phrased by many authorities, is that courts may not interfere with an administrative agency's discretionary authority unless it is exercised arbitrarily or capriciously or unless the administrative decision is against the manifest weight of the evidence. (*E.g., Massa v. Department of Registration & Education* (1987), 116 Ill. 2d 376, 388, 507 N.E.2d 814, 819; *Murdy v. Edgar* (1984), 103 Ill. 2d 384, 391, 469 N.E.2d 1085, 1088; *People ex rel. Stephens v. Collins*

(1966), 35 Ill. 2d 499, 501, 221 N.E.2d 254, 255.) In terms of that formulation of the rule, it has been said that, when determining whether an administrative decision is contrary to the manifest weight of the evidence, a court should consider the severity of the sanction imposed. *Cartwright v. Illinois Civil Service Comm'n* (1980), 80 Ill. App. 3d 787, 793, 400 N.E.2d 581, 586; *Kelsey-Hayes Co. v. Howlett* (1978), 64 Ill. App. 3d 14, 17, 380 N.E.2d 999, 1002. Contra *Epstein v. Civil Service Comm'n* (1977), 47 Ill. App. 3d 81, 84, 361 N.E.2d 782, 785.

An alternative formulation of the rule is that, when judging whether an agency sanction is arbitrary or unreasonable, manifest weight of the evidence is not the applicable standard of review, because the reasonableness of the sanction, not the correctness of the agency's findings or reasoning, is the issue. *E.g., Brown v. Civil Service Comm'n* (1985), 133 Ill. App. 3d 35, 39, 478 N.E.2d 541, 544.

In any event, however, courts will not hesitate to grant relief from an adverse agency decision if that decision is not supported in the record by sufficient evidence. (*Basketfield v. Police Board* (1974), 56 Ill. 2d 351, 359, 307 N.E.2d 371, 375; *Feliciano v. Illinois Racing Board* (1982), 110 Ill. App. 3d 997, 1003, 443 N.E.2d 261, 266.) Thus, a court may reverse an order for imposing an unwarranted sanction. See *Feliciano*, 110 Ill. App. 3d at 1005, 443 N.E.2d at 267; *Cartwright*, 80 Ill. App. 3d at 793-94, 400 N.E.2d at 586.

■■■ On the questions of Letourneau's residency and Rizzo's activities, which clearly were the most important to the Department and the Director, the Director's findings were unsupported by substantial evidence. We believe that the Director's decision to revoke plaintiffs' licenses, based as it was primarily on such unsupported findings, represented an arbitrary and unwarranted sanction.

Accordingly, we affirm the judgment of the circuit court, which reversed the Director's revocation of plaintiffs' licenses.

Affirmed.

CERDA, P.J., and RIZZI, J., concur.