CITIZENS FOR THE PRESERVATION OF KNOX COUNTY, INC., Plaintiff-Appellant, v. THE DEPARTMENT OF MINES AND MINERALS *et al.*, Defendants-Appellees.

Third District   No. 3—85—0697

Opinion filed October 29, 1986.

William F. Morris, of Peoria, and Mary Lee Leahy, of Leahy & Leahy, of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (William D. Frazier, Assistant Attorney General, of Chicago, and Robert A. Creamer and J. Reed Roesler, of counsel), for appellee Illinois Department of Mines and Minerals.

J. Reed Roesler, of Keck, Mahin & Cate, of Peoria, and Robert A. Creamer, of Keck, Mahin & Cate, of Chicago, for appellee Midland Coal Company.

John T. Schlake, Assistant State's Attorney, of Galesburg, for appellee Knox County, Illinois.

Albert F. Ettinger, of Freeman, Freeman & Salzman, P.C., of Chicago, for *amici curiae.*

JUSTICE STOUDER delivered the opinion of the court:

This is an appeal by the Citizens for the Preservation of Knox County, Inc. (the citizens group) from the judgment of the circuit court of Knox County granting defendants' motion to dismiss for lack of standing to challenge the permit issued to Midland Coal Company. The Department of Mines and Minerals and Knox County, a municipal corporation, appeared as codefendants with Midland Coal Company. Additionally, 11 groups were granted leave to file as a single party intervenor. Among those participating as *amici curiae* are the Audubon Council of Illinois, Inc., The Sierra Club, The Illinois Safe Energy Alliance, and The Environmental Task Force.

The citizens group is a nonprofit organization having a long history of involvement in the implementation and enforcement of the Federal Surface Mining Act Control and Reclamation Act of 1977 (30 U.S.C. sec. 1201 *et seq.* (1982)). The citizens group was organized in the late 1970's for the purposes of preserving the tax base of Knox County and supporting high standards of reclamation after strip mining, and to provide a vehicle to raise funds for legal expenses involved in enforcing strict reclamation standards. The citizens group has been involved in the adoption of Federal and State strip mining regulations and in the issuance of strip-mine permits in Knox County.

On February 14, 1984, Midland Coal Company filed a verified application with the Department of Mines and Minerals (the Department) for a coal surface disturbance permit on certain lands located in the Illinois counties of Knox and Fulton. The application was made pursuant to the provisions of the Surface Coal Mining Land Conservation and Reclamation Act (Ill. Rev. Stat. 1983, ch. 96½, par. 7901.01 *et seq.*) (the Illinois Act), adopted in accordance with the Federal Surface Mining Control & Reclamation Act of 1977 (30 U.S.C. sec. 1201 *et seq.* (1982)) (the Federal Act).

On March 16, 1984, the Department deemed the application to be complete and the required statutory notices were published. After the

publication of the notices, the Knox County board requested a public hearing, which was held on June 13, 1984. The citizens group appeared at the public hearing and presented testimony and other evidence in opposition to the issuance of the permit. After the public hearing, the Department issued its "Results of Review" granting the permit on December 14, 1984, and the citizens group was given notice by certified mail.

On January 11, 1985, the citizens group filed a request for hearing with the Department pursuant to section 1787.11 of the Department's rules and regulations. The departmental administrative review was conducted by a hearing officer appointed and paid by the Department. A hearing was conducted on February 1, 1985, at which time various motions were considered, including Midland's motion to dismiss for lack of standing. Midland alleged that the citizens group was not a party with an interest which "is or may be adversely affected" by the decision of the Department, which is a statutory prerequisite to bringing such an action. The hearing officer denied the motion on the basis that the citizens group had participated in the public hearing and had been given notice of the action taken by the Department and, therefore, was a party with an interest that could be adversely affected. The hearing officer stated that Midland could reargue the question of standing at a later time if it wished.

Evidentiary hearings were held on May 21, 22, and 23, 1985. Testifying on behalf of the citizens group was Leo Hennenfent, a member of the Knox County board and vice-chairman of its land use committee. Hennenfent testified that the members of the citizens group are residents of Knox County, taxpayers, and consumers of agricultural products. He also stated that there had been a reduction in the tax base due to mining that had already taken place.

On August 12, 1985, the hearing officer issued his "Order and Decision." The hearing officer ruled that the citizens group was not a party with an interest which is or could be adversely affected by the issuance of the permit and that it lacked standing to bring the action. The requested relief—denial of the permit—was denied. The citizens group then filed a complaint for administrative review in the circuit court of Knox County. On August 26, 1985, Midland filed a motion to dismiss alleging the citizens group's lack of standing. The circuit court granted the motion to dismiss, and this appeal follows.

■ The focus of our inquiry is to determine whether the citizens group falls within the statutory language of a party "having an interest which is or may be adversely affected" by the issuance of the permit. The fact that the hearing officer initially denied the motion on

the basis that the citizens group had participated in the public hearing and had been given notice of the action taken by the Department is not controlling. The statutory scheme, which includes provisions for public hearings and notice to the participants, is not indicative of the notion that everyone participating in these hearings or expressing some interest in the outcome should be deemed to have standing to seek judicial review of an administrative agency's actions. Additionally, the question of standing is a matter of law, and as such, this court is not bound by the administrative agency's conclusions of law. (*Danison v. Paley* (1976), 41 Ill. App. 3d 1033, 355 N.E.2d 230.) The question is whether the special interest which led to the formation of the citizens group gives them standing to seek review in this case. We have determined that it does not.

The statutory test for standing, *i.e.*, "a person with an interest which is or may be adversely affected," is used consistently in both the Federal Act and the State Act. Because the State Act was intended to fully comply with the requirements of the Federal Act (Ill. Rev. Stat. 1983, ch. 96½, par. 7901.02(b)), an examination of cases interpreting the standing requirement is essential to our determination.

Initially, we address the citizens group's contention that standing in this case exists on the basis of statutory enactment. In support of their position, they rely on *Havens Realty Corp. v. Coleman* (1982), 455 U.S. 353, 71 L. Ed. 2d 214, 102 S. Ct. 1114. Although standing can derive from a statutory enactment, an examination of *Havens* and the statute upon which the citizens group relies in this case lead to a result contrary to that which the citizens group proposes.

In *Havens* the statutory section of the Federal housing act in question states that it is unlawful to provide misinformation concerning the availability of property for sale or rent. That lead to the holding, in that case, that not all of the plaintiffs were deemed to have standing. The white "tester" seeking information on the availability of apartments was not provided with false information and, therefore, had no support for his position that he had standing to sue. The basis for the court's holding was that there was no allegation of "specific injury" to the tester's statutory right to accurate information concerning the availability of housing. *Havens Realty Corp. v. Coleman* (1982), 455 U.S. 353, 375, 71 L. Ed. 2d 214, 227, 102 S. Ct. 1114, 1122.

■ In this case, the citizens group relies on the "purposes" section of the Federal Act, which states:

"It is the purpose of this chapter to—
* * *

(i) assure that appropriate procedures are provided for the public participation in the development, revision, and enforcement of regulations, standards, reclamation plans, or programs established by the Secretary or any State under this chapter." (30 U.S.C. sec. 1202(i) (1982).)

However, if this section were to provide standing, as proposed by the citizens group, exclusive of the "party with an interest" language, the general terms of this section would provide such a broad basis upon which to invoke standing that, conceivably, any individual in Illinois who wished to contest the type of action involved in this case could do so on the basis of this statutory section. To permit any person or organization, no matter how far they may be physically removed from the situs of the proposed strip mine, to claim standing in such a case is an untenable position and clearly not one contemplated by the legislature. The "purposes" section must be read in conjunction with the other sections of the Act. When this is done, the only conclusion which provides some structure and predictability under the statutory standing theory is that which provides that a person, to have an interest which is or may be adversely affected and who is aggrieved by the decision of the regulatory authority, must allege a specific injury which is proscribed by the statute itself.

■ It must also be noted, however, that the specific injury alleged must also be more than a "special interest" in the situation or plaintiff's restatement of the legislative policy into complaint form. The United States Supreme Court addressed this concern in *Sierra Club v. Morton* (1972), 405 U.S. 727, 31 L. Ed. 2d 636, 92 S. Ct. 1361, and *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)* (1973), 412 U.S. 669, 37 L. Ed. 2d 254, 93 S. Ct. 2405. In *Sierra Club v. Morton*, the plaintiff, Sierra Club, had a special interest in protecting and conserving the national resources of the Sierra Nevada Mountains. In its complaint the Club stated that "[i]ts interests would be vitally affected by the acts hereinafter described and would be aggrieved by those acts of the defendants as hereinafter more fully appears." (*Sierra Club v. Morton* (1972), 405 U.S. 727, 735 n.8., 31 L. Ed. 2d 636, 643 n.8., 92 S. Ct. 1361, 1366 n.8.) The court, holding that the Sierra Club had no standing to seek judicial review in the matter, stressed the importance of demonstrating that the party seeking review be among the injured because it is this requirement that gives a litigant a direct stake in the controversy and prevents the judicial process from becoming no more than a vehicle for the vindication of value interests of concerned bystanders. The court stated:

"The Sierra Club is a large and long-established organization,

with a historic commitment to the cause of protecting our Nation's national heritage from man's depredations. But if a special interest in this subject were enough to entitle the Sierra Club to commence this litigation, there would appear to be no objective basis upon which to disallow a suit by any other bona fide special interest organization however small or short-lived. And if any group with a bona fide special interest could initiate such litigation, it is difficult to perceive why any individual citizen with the same bona fide special interest would not also be entitled to do so." 405 U.S. 727, 739-40, 31 L. Ed. 2d 636, 645-56, 92 S. Ct. 1361, 1368.

The holding of *Sierra Club* was followed, but the facts distinguished, when the court decided *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)* (1973), 412 U.S. 669, 37 L. Ed. 2d 254, 93 S. Ct. 2405. The court held that, by contrast, SCRAP claimed that "the specific and allegedly illegal action of the Commission would directly harm them in their use of the natural resources of the Washington Metropolitan Area." (412 U.S. 669, 687, 37 L. Ed. 2d 254, 269, 93 S. Ct. 2405, 2416.) Unlike the Sierra Club, which was deemed only to have a general interest in seeing that the law was enforced, SCRAP had specifically alleged that their members used the forests, streams, mountains, and other resources for hiking, camping, fishing, and sightseeing and that this use was disturbed by the adverse environmental impact caused by the agency's decision. While acknowledging the fact that this was a sufficient allegation to withstand the motion to dismiss, the court placed a caveat on a plaintiff's use of a complaint framed in sweeping terms. The court stated:

"Of course, pleadings must be something more than an ingenious academic exercise in the conceivable. A plaintiff must allege that he had been or will in fact be perceptibly harmed by the challenged agency action, not that he can imagine circumstances in which he could be affected by the agency's action." 412 U.S. 669, 688-89, 37 L. Ed. 2d 254, 270, 93 S. Ct. 2405, 2416.

The citizens group in this case occupies a position similar to that of the Sierra Club. Their allegations appear to be nothing more than the legislative declaration in complaint form. In light of *Sierra Club* and *SCRAP*, there is no adequate basis to provide this group with standing to contest the issuance of this permit.

■ Finally, the citizens group contends that the legislative declaration of policy concerning conservation, development, and management of natural resources to aid in maintaining or improving the tax

base gives them standing as taxpayers to oppose the issuance of the permit. The cases decided on taxpayer standing lend no support to this position. The taxpayer-standing cases, both Federal and Illinois, deal with the alleged misappropriation or illegal disbursement of public funds and have denied standing unless the taxpayer could show a measurable appropriation or disbursement of funds occasioned solely by the activities complained of. (See *Doremus v. Board of Education* (1952), 342 U.S. 429, 96 L. Ed. 475, 72 S. Ct. 394 (taxpayer standing denied in action for judgment declaring statute providing for reading of Bible verses in public school unconstitutional).) The Illinois cases on this point also support the proposition that taxpayers have a right to enjoin the misuse of public funds based upon the taxpayers' ownership of such funds and their liability to replenish the public treasury for the deficiency caused by such misappropriations. (*J. H. Hallstrom v. City of Rockford* (1959), 16 Ill. 2d 297, 157 N.E.2d 23; *Turkovich v. Board of Trustees* (1957), 11 Ill. 2d 460, 143 N.E.2d 229). However, where the case did not involve State funds or State expenditures, there was no standing to sue as a taxpayer. *Barco Manufacturing Co. v. Wright* (1957), 10 Ill. 2d 157, 139 N.E.2d 227 (taxpayer standing denied because unemployment compensation fund not general public fund or part of State revenue).

The citizens group has not alleged a misuse or misappropriation of funds brought about by the issuance of the permit. The only allegation is that the proposed reclamation may result in a reduction to the county's tax base. Unlike the other taxpayer-standing cases, we find no direct or particular financial interest here. Absent this dollar-and-cents injury, the citizens group cannot bring this case on the basis of taxpayer standing.

Because we have determined that the citizens group has no standing in this matter, it is unnecessary to address the merits of this case, and the order of the circuit court granting the defendants' motion to dismiss is affirmed.

Affirmed.

HEIPLE and WOMBACHER, JJ., concur.