OGLE COUNTY BOARD *ex rel.* THE COUNTY OF OGLE *et al.*, *et al.*, Appellants, v. POLLUTION CONTROL BOARD *et al.*, Appellees.

Second District   No. 2—94—0074

Opinion filed April 20, 1995.

McLAREN, P.J., dissenting.

Douglas P. Floski, State's Attorney, of Oregon, and Glenn C. Sechen and Kerri L. McBride, both of Schain, Firsel & Burney, Ltd., of Chicago, for petitioner Ogle County Board.

Raymond T. Reott, Jeanine M. Jiganti, and Claire E. McFarland, all of Jenner & Block, of Chicago, for petitioner Browning-Ferris Industries of Illinois, Inc.

James E. Ryan, Attorney General, and Dorothy M. Gunn, of Pollution Control Board, both of Chicago (Alison E. O'Hara and Jan E. Hughes, Assistant Attorneys General, of counsel), for respondent Pollution Control Board.

Kim D. Krahenbuhl, of Williams & McCarthy, of Oregon, and Todd S. Parkhurst, of Schiff, Hardin & Waite, and Allen Shoenberger, of Loyola University of Chicago Law School, both of Chicago, for respondent Leonard Carmichael.

JUSTICE GEIGER delivered the opinion of the court:

This case involves the appeal of a local siting approval under section 39.2 of the Environmental Protection Act (the Act) (415 ILCS 5/39.2 (West Supp. 1993)), for the expansion of a sanitary landfill owned by appellant Browning-Ferris Industries of Illinois, Inc. (BFI). Following the grant of site location approval by the appellant, Ogle County Board (County Board), appellee Leonard Carmichael filed an appeal to appellee Pollution Control Board (PCB) pursuant to section 40.1 of the Act (415 ILCS 5/40.1 (West 1992)). At the PCB hearing, Carmichael raised a challenge to the sufficiency of the prefiling notice required by section 39.2(b) of the Act (415 ILCS 5/39.2(b) (West Supp. 1993)).

On October 7, 1993, the PCB reversed the County Board's decision on the notice issue. The PCB denied BFI and the County Board's joint motion for reconsideration and/or rehearing on December 16, 1993. On January 18, 1994, BFI and the County Board filed their

timely petition for review pursuant to section 40.1(a) of the Act (415 ILCS 5/40.1(a) (West 1992)).

The facts of this case are largely undisputed. In the fall of 1992, BFI sought to expand its existing landfill located in unincorporated Ogle County. On November 13, 1992, as required by the Act (415 ILCS 5/39.2 (West Supp. 1993)), BFI filed its application for expansion of its landfill with the County Board.

■ In addition to the filing requirements, section 39.2(b) of the Act provides:

> "No later than 14 days prior to a request for location approval the applicant shall cause written notice of such request to be served either in person or by registered mail, return receipt requested, on the owners of all property within the subject area not solely owned by the applicant, and on the owners of all property within 250 feet in each direction of the lot line of the subject property ***.

> Such written notice shall also be served upon members of the General Assembly from the legislative district in which the proposed facility is located and shall be published in a newspaper of general circulation published in the county in which the site is located." 415 ILCS 5/39.2(b) (West Supp. 1993).

On October 27, 1992, 17 days prior to the filing of its application, BFI sent written notice via registered mail to 18 individuals. Although all the notices were received by the recipients' post offices by October 30, two were not delivered to the recipients until after the deadline—specifically, those addressed to Todd Pfab, an owner of land adjacent to the landfill, and to then-State Senator Harlan Rigney, whose legislative district at that time encompassed the landfill.

In regard to Pfab's letter, the post office attempted delivery at his home on October 28, 1992. Because no one was home, a yellow slip was left at Pfab's home, notifying him that the post office was holding registered mail for him. Pfab eventually picked up the letter on November 3, 1992.

Similarly, the letter to Senator Rigney was sent to his designated address, a post office box. On October 28, 1992, a yellow notice slip was placed in Senator Rigney's box. On November 2, 1992, Rebecca Hanson, Senator Rigney's agent, picked up his mail and signed the return receipt. Neither Pfab nor Senator Rigney has challenged the timeliness of their preapplication notices.

On February 17, 1993, public hearings on the proposed expansion began before the County Board. Carmichael, either personally or through counsel, actively participated in the hearings, testifying that

he thought that the landfill expansion was unnecessary. At the February 17 hearing, BFI offered, without objection, the return receipt green cards as evidence of its compliance with the preapplication notice requirements.

Pursuant to County Board rules, a 30-day public comment period followed the hearing. During that time, Carmichael again actively campaigned against the landfill expansion. He sent letters to the County Board, both personally and through his attorney, opposing the expansion. Also during the public comment phase of the hearing, Pfab submitted questions to the County Board which detailed his concerns about the expansion, although none related to the timeliness of his notice. On March 26, 1993, BFI filed its written response to Pfab's comments.

On May 10, 1993, the County Board approved BFI's application for landfill expansion. The County Board found that "all notices[ ] were duly and properly given as required by law," and that "the County has jurisdiction to hear and grant or deny the application of BFI for site location approval of a regional pollution control facility."

On June 14, 1993, Carmichael filed a petition with the PCB pursuant to section 40.1(b) of the Act (415 ILCS 5/40.1(b) (West 1992)) appealing the County Board's decision. The petition challenged only the fundamental fairness of the procedures used by the County Board in approving BFI's application. Carmichael never made any formal allegation regarding the adequacy of the prefiling notice.

On July 2, 1993, the County Board filed a motion directed at the petition; on July 6, 1993, BFI filed a similar motion to strike and dismiss. The substance of both motions was that Carmichael's petition was inadequate, that it was untimely, and portions of the petition should be stricken. In addition, on July 27, 1993, the County Board filed a motion alleging that the PCB lacked jurisdiction over the petition. The County Board argued that because Carmichael was not so located as to be "affected by" the facility, as required by section 40.1(b) of the Act (415 ILCS 5/40.1(b) (West 1992)), he thus lacked standing to file the petition. The PCB denied these motions on August 5, 1993.

On August 19, 1993, at the public hearing on the petition, Carmichael first alleged that the prefiling notices to Senator Rigney and Pfab were defective. On October 7, 1993, the PCB vacated the County Board's decision granting siting approval, finding that "notice was not properly given pursuant to section 39.2(b) of the Act." Additionally, the PCB held that it was unreasonable to expect that service would be perfected when BFI mailed notices 17 days prior to filing the request for siting approval. Because BFI's prefiling notice was

defective, the PCB found that the County Board lacked jurisdiction to hear the request for siting approval. The PCB did not address Carmichael's remaining arguments.

On December 16, 1993, the PCB denied BFI and the County Board's motions to reconsider. On January 18, 1994, BFI and the County Board filed a joint petition for review.

At issue on appeal is: (1) whether Carmichael has standing to appeal the County Board's decision; (2) whether Carmichael has standing to contest the timeliness of the notice to Pfab and Senator Rigney; (3) whether Carmichael waived his challenge to the timeliness of the prefiling notice; (4) whether the notice to Pfab and Senator Rigney was timely; and (5) whether the County Board was denied fundamental fairness. We affirm.

We first address the appellants' argument that Carmichael lacked standing to petition the PCB for a hearing to contest the approval of the landfill expansion by the County Board. The appellants argue that, apart from the conclusory allegation in his petition that he will be "greatly affected by" the landfill expansion, Carmichael failed to properly plead and prove that he was so located as to be "affected by the proposed facility" under section 40.1(b) of the Act (415 ILCS 5/40.1(b) (West 1992)).

Section 40.1(b) provides, in pertinent part:

"If the county board *** grants approval under Section 39.2 of this Act, a third party other than the applicant who participated in the public hearing conducted by the county board *** may petition the [Pollution Control] Board within 35 days for a hearing to contest the approval of the county board ***. Unless the Board determines that *** the petitioner is so located as to not be affected by the proposed facility, the Board shall hear the petition in accordance with the terms of subsection (a) of this Section ***." (415 ILCS 5/40.1(b) (West 1992).)

Citing *Stark v. Pollution Control Board* (1988), 177 Ill. App. 3d 293, and *Village of Lake in the Hills v. Laidlaw Waste Systems, Inc.* (1986), 143 Ill. App. 3d 285, the appellants contend that Carmichael's asserted interests are too attenuated to confer standing to petition the PCB under section 40.1(b).

The essence of the standing inquiry is whether a litigant is entitled to have the court decide on the merits of the dispute or of a particular issue. (*Helmig v. John F. Kennedy Community Consolidated School District No. 129* (1993), 241 Ill. App. 3d 653, 658.) Under section 40.1(b), a third party may petition the PCB for review unless the PCB finds that the petitioner will not be "affected by" the proposed facility. (415 ILCS 5/40.1(b) (West 1992).) The "affected by" inquiry of

section 40.1(b) thus controls whether or not the petitioner is entitled to contest a location approval before the PCB—that is, whether the petitioner has standing before the PCB.

The appellants' reliance on *Stark* and *Lake in the Hills* is misplaced. In *Stark*, the court addressed the issue of whether a resident of Du Page County living five miles from a proposed landfill had standing to challenge the constitutionality of section 39.2(h) of the Act (Ill. Rev. Stat. 1985, ch. 111$^1$/$_2$, par. 1039.2(h) (now codified, as amended, at 415 ILCS 5/39.2(h) (West Supp. 1993))), which exempted facilities in Chicago or unincorporated Cook County from being subject to the provisions of section 39.2. (*Stark*, 177 Ill. App. 3d at 295-96.) In finding that the petitioner lacked standing, the *Stark* court took care to delineate the boundaries of its holding:

> "[T]he issue before us is not whether the petitioner has standing to contest the issuance of the permit by the Cook County board. The narrow issue before us, rather, is whether the petitioner has standing to claim that the procedural distinctions created by the statute are unconstitutional." (*Stark*, 177 Ill. App. 3d at 298.)

Although the court expressed a difficulty in reconciling a lack of standing to contest the Cook County board's decision with a lack of standing to raise a constitutional claim (*Stark*, 177 Ill. App. 3d at 298), it did not, as the County Board suggests, "equate[ ] the 'affected by' language of [s]ection 40.1 with the requirements for standing."

Similarly, the court in *Lake in the Hills* addressed the issue of whether the Villages of Lake in the Hills and Algonquin had standing to enjoin further hearings on Laidlaw Waste Systems' application to the McHenry County Board for site approval of a proposed sanitary landfill. (*Lake in the Hills*, 143 Ill. App. 3d at 287.) The court held that the plaintiffs had failed to establish that they possessed any recognized right or interest for which they would be entitled to the protection of a preliminary injunction. *Lake in the Hills*, 143 Ill. App. 3d at 295.

The case at bar involves neither a constitutional challenge to the statute nor the issuance of a preliminary injunction. Thus, the pronouncements in *Stark* (petitioner challenging statute on constitutional grounds must be "directly or materially affected by the provision, and he must have sustained or be in immediate danger of sustaining a direct injury as a result of enforcement of the challenged statute" (*Stark*, 177 Ill. App. 3d at 297)) and *Lake in the Hills* (plaintiff seeking a preliminary injunction must establish "a clearly ascertainable right or interest which needs protection" (*Lake in the Hills*, 143 Ill. App. 3d at 292)) are inapposite. Rather, the standing inquiry here is governed by the "affected by" language of section 40.1(b) (415 ILCS 5/40.1(b) (West 1992)).

In his discovery deposition, Carmichael testified that he lives approximately 10 miles from the facility. He stated that he is a minority shareholder and chairman of the board of Maplehurst Farms, the farm on which he resides. He is also a director of Maplehurst Elevator Corporation, which purchases grain from and supplies fertilizer and chemicals to a farm on which BFI's proposed site is located. Carmichael testified that his elevator corporation would lose the crops from the land to be used for the landfill. Moreover, the parties stipulated that, if called, Carmichael would testify that one of his grain elevators is located on land which he owns that is 2.5 miles from the landfill.

Carmichael further testified that waste from the garbage dumpsters at Maplehurst Farms and at Maplehurst Elevator Corporation is currently taken to the city-owned landfill in Rochelle. He speculated that BFI's landfill expansion could put Rochelle out of business, forcing him to use BFI at double the price. Additionally, Carmichael testified that he is a director and shareholder in Holcomb State Bank, located approximately four miles from the proposed site. He expressed concern that, from the bank's standpoint, the landfill expansion would lower the property values in the area.

■ We believe that, based on his deposition, Carmichael has established that he is not "so located as to not be affected by the proposed facility." (See 415 ILCS 5/40.1(b) (West 1992).) Although we acknowledge that the question of standing is a matter of law and that a reviewing court is not bound by the agency's conclusions in that regard (*Citizens for the Preservation of Knox County, Inc. v. Department of Mines & Minerals* (1986), 149 Ill. App. 3d 261, 264), we also note that courts will give substantial weight and deference to the interpretation of a statute by the agency charged with its administration and enforcement (*Lake County Board of Review v. Property Tax Appeal Board* (1989), 192 Ill. App. 3d 605, 614). Here, we find adequate support in the record for the PCB's determination that Carmichael had met his burden under section 40.1(b).

Next, we consider together whether Carmichael had standing to challenge the timeliness of the notice to Pfab and Senator Rigney and whether Carmichael waived the claim by failing to raise it before the County Board and in his petition to the PCB, first doing so only at the hearing before the PCB. The appellants argue that Carmichael lacks any cognizable interest in whether the notice to Pfab and Senator Rigney was timely and thus may not assert such a claim on their behalf. In addition, the appellants contend that Carmichael's failure to raise the claim of defective notice before the County Board and in his petition for review to the PCB served to waive the argument. Car-

michael and the PCB, by contrast, assert that the notice requirements of section 39.2(b) are jurisdictional; accordingly, a failure to comply with section 39.2 will render the County Board without the authority to approve a landfill siting request.

■ We agree with Carmichael and the PCB. Unlike a court, an administrative agency is a statutory creation, limited in its authority by statute. (*Newkirk v. Bigard* (1985), 109 Ill. 2d 28, 37.) To the extent that an agency acts outside its statutory authority, it acts without jurisdiction. (*Business & Professional People for the Public Interest v. Illinois Commerce Comm'n* (1989), 136 Ill. 2d 192, 243.) Although the term "jurisdiction" is not strictly applicable to an administrative body, it is used to designate the authority of the administrative body to act. (*Newkirk*, 109 Ill. 2d at 37.) In the administrative law context, therefore, the term "jurisdiction" has three aspects: (1) personal jurisdiction (*i.e.*, the agency's authority over the parties and intervenors involved in the proceedings); (2) subject-matter jurisdiction (*i.e.*, the agency's power over the general class of cases to which the particular case belongs); and (3) an agency's scope of authority under its statute. (*Business & Professional People*, 136 Ill. 2d at 243.) This third aspect may properly be considered the inherent power of an agency to make or enter the particular order involved. (See *Business & Professional People*, 136 Ill. 2d at 243-44; *City of Chicago v. Fair Employment Practices Comm'n* (1976), 65 Ill. 2d 108, 112.) It is this aspect of the County Board's jurisdiction which we address in the case at bar.

■ Section 39.2 confers on a county board the power to rule on requests for local siting approval, thus vesting the board with subject-matter jurisdiction over such approvals. However, in order for the board to have jurisdiction over a particular case within the class of cases—that is, the power to act over a *given* siting request—the applicant must comply with the notice requirements set forth in section 39.2(b). (See *Kane County Defenders, Inc. v. Pollution Control Board* (1985), 139 Ill. App. 3d 588, 593.) As this court held in *Kane County Defenders*, the notice requirements contained in section 39.2(b) of the Act are "jurisdictional prerequisites which must be followed in order to vest the county board with the power to hear a landfill proposal." 139 Ill. App. 3d at 593; see also *Concerned Boone Citizens, Inc. v. M.I.G. Investments, Inc.* (1986), 144 Ill. App. 3d 334, 339; *Browning-Ferris Industries of Illinois, Inc. v. Pollution Control Board* (1987), 162 Ill. App. 3d 801, 805.

Although *Kane County Defenders*, *Concerned Boone Citizens*, and *BFI* all involved a failure to comply with the publication requirements, and not the individual notice requirements, of section 39.2(b), nothing in the language of the opinions suggests that their holdings

are so limited. *Kane County Defenders*, relied upon by both *Concerned Boone Citizens* and *BFI*, referred to "[t]he notice requirements contained in section 39.2(b) of the Environmental Protection Act" (*Kane County Defenders*, 139 Ill. App. 3d at 593; see also *Concerned Boone Citizens*, 144 Ill. App. 3d at 339; *Browning-Ferris*, 162 Ill. App. 3d at 805), and not simply to the publication notice requirements of the same section.

Nor do we see a reason to restrict the jurisdictional nature of the notice requirements solely to the publication requirements of section 39.2(b). As this court noted in *Kane County Defenders*:

> "This broad delegation of adjudicative power to the county board clearly reflects a legislative understanding that the county board hearing, which presents the only opportunity for public comment on the proposed site, is the most critical stage of the landfill site approval process. We find support for this view also in the statutory notice requirements themselves, which are more demanding at the county board phase of the process." (*Kane County Defenders*, 139 Ill. App. 3d at 593.)

It would be incongruous to suggest that although noncompliance with the publication notice requirements of section 39.2(b) divests the county board of the authority to act over a siting request, a failure to timely notify those people who the legislature has determined have an interest great enough to warrant individual notice via registered mail of the most critical stage of the landfill site approval process is somehow of lesser significance. Following the rule in *Kane County Defenders*, therefore, we hold that compliance with the individual notice requirements of section 39.2(b), as with the publication notice requirements, is a jurisdictional prerequisite to a county board's authority to act over a given landfill proposal. See 139 Ill. App. 3d at 593.

The appellants rely heavily on *Taylor Coal Co. v. Industrial Comm'n* (1922), 301 Ill. 381, to argue that Carmichael waived any argument regarding the alleged defect in the notice to Pfab and Senator Rigney by failing to raise it at any time before the PCB hearing. As the *Taylor* court stated:

> "The general rule as applied to courts is, that jurisdiction of the subject matter[ ]—which means jurisdiction of the class of cases to which the particular case belongs and not jurisdiction of a case within such a class[ ]—cannot be waived. The method by which jurisdiction of a particular case within the general class of cases is obtained, and any defects or irregularities in respect thereto, may be waived, and are waived unless seasonable objection is made in accordance with the established practice. [Citations.] Where a court has jurisdiction of the subject matter and may take jurisdic-

tion of a particular case if certain conditions exist, and no objection is raised to the exercise of jurisdiction, *** a party will be deemed to have waived the jurisdictional question. [Citations.]" (301 Ill. at 384.)

The Appellate Court, First District, later extended the *Taylor* holding by analogy to administrative proceedings, specifically holding that "[i]f the administrative body has acquired jurisdiction of the subject matter and of the parties to a proceeding, it may proceed with the specific case before it although it may not have power to deal with that specific case, where no timely and proper objection is made." *Beam v. Erven* (1971), 133 Ill. App. 2d 193, 196.

We believe that *Beam*'s application of *Taylor* to the administrative context is unsupportable in light of the supreme court's later decision in *Business & Professional People* (136 Ill. 2d 192). An order entered by an agency lacking the statutory power to enter it is void. (See *Business & Professional People*, 136 Ill. 2d at 244.) Because the County Board's authority to deal with a given landfill proposal requires compliance with the notice requirements of section 39.2(b), any order entered in the absence of such compliance is void in that the County Board entering the order would "lack[ ] the inherent power to *** enter the particular order involved" (emphasis omitted) (*Fair Employment Practices Comm'n*, 65 Ill. 2d at 112). Thus, *Beam* notwithstanding, it is clear that Carmichael could not waive his challenge to the timeliness of the notice, as BFI's alleged failure to comply with section 39.2(b) would have rendered the County Board's approval void, leaving the order subject to attack at any time or in any court (see *Fair Employment Practices Comm'n*, 65 Ill. 2d at 112). Furthermore, we find that Carmichael's standing as a person who is "affected by the proposed facility" (see 415 ILCS 5/40.1(b) (West 1992)) is sufficient to give him standing to challenge the validity of the County Board's approval by raising the claim of defective notice.

Finally, we address whether BFI's notice to Pfab and Senator Rigney was timely. BFI argues that it "cause[d] written notice of [its] request to be served" within the meaning of section 39.2(b) of the Act (415 ILCS 5/39.2(b) (West Supp. 1993)), because it initiated service more than 14 days prior to filing its application for landfill expansion. Moreover, BFI argues that even if section 39.2(b) requires receipt of the notice, the mailbox rule establishes that Pfab and Senator Rigney's receipt of the notice was timely or, alternatively, that Pfab and Senator Rigney were constructively served within the 14-day deadline.

Likewise, the County Board argues that section 39.2(b) only requires that notice be mailed 14 days in advance of the filing of the

application. The County Board further claims that the PCB's application of its procedural rule, which creates a rebuttable presumption that service by first class mail will be complete within four days, was improper. In addition, the County Board contends that the PCB erroneously failed to apply the manifest weight of the evidence standard to the County Board's finding that all notices had been properly given and that the County had jurisdiction over BFI's application; that BFI's notice in the instant case was "reasonably expected to be received by the notice deadline"; that actual receipt of the notice was not required; that Carmichael failed to prove that Pfab was entitled to notice; and that, in any event, Pfab and Senator Rigney were constructively served.

As an initial matter, we find it unnecessary to address the County Board's argument as to whether Carmichael proved that Pfab was entitled to notice. Even if notice to Pfab was not required, it is undisputed that Senator Rigney *was* entitled to such notice. Because compliance with the notice requirements goes to the power of the County Board to act (see *Kane County Defenders*, 139 Ill. App. 3d at 593), the failure to notify any party entitled to statutory notice will divest the County Board of jurisdiction over the landfill application. Thus, we turn to our analysis of the notice requirement of section 39.2.

■ A reviewing court is not formally bound by an administrative decision as to the legal effect of statutory words and retains its authority to construe the statute to the contrary. (*Lake County Board of Review*, 192 Ill. App. 3d at 614.) The PCB has construed the Act as requiring initiation of service "sufficiently far in advance to reasonably expect receipt of notice 14 days in advance of filing of a notice." *City of Columbia v. County of St. Clair* (April 3, 1986), Ill. PCB Nos. 85—177, 85—220, 85—223 cons. Further, if a potential recipient refuses to sign a receipt of notice, the PCB will look to "[t]imely and diligent attempts to obtain service." *DiMaggio v. Solid Waste Agency of Northern Cook County* (1990), Ill. PCB 89—138, slip op. at 10.

The basic rule in interpreting a statute is to give effect to the intention of the legislature. (*Cunningham v. Huffman* (1993), 154 Ill. 2d 398, 405.) Moreover, courts should not construe a statute so as to render specific language superfluous. *Maske v. Kane County Officers Electoral Board* (1992), 234 Ill. App. 3d 508, 512.

Here, the statute requires that written notice be served "either in person or by registered mail, return receipt requested." (415 ILCS 5/39.2 (West Supp. 1993).) Our supreme court has interpreted the inclusion of the "return receipt requested" language in the context of a forcible entry and detainer action to "clearly indicate[ ] a legisla-

tive intent that service of a notice by certified mail is not to be considered complete until it is received by the addressee." (*Avdich v. Kleinert* (1977), 69 Ill. 2d 1, 9.) The *Avdich* court specifically noted that "[i]f mere mailing of a *** notice [were] sufficient service, then proof of mailing would be all that was required to show service, and there would be little reason to require a returned receipt." 69 Ill. 2d at 9.

BFI attempts to distinguish *Avdich* by asserting that it has been limited to its specific facts. (See *Zito v. Guttilla* (1988), 176 Ill. App. 3d 933, 936.) In *Zito*, however, the basis for the court's distinction was that *Avdich* involved a case "in which a returned receipt [was] a statutorily mandated requisite for establishing [personal] jurisdiction." (*Zito*, 176 Ill. App. 3d at 936.) As discussed above, however, the notice provisions of section 39.2(b) are also jurisdictional, going to the County Board's power to hear a landfill proposal. (*Kane County Defenders*, 139 Ill. App. 3d at 593.) We see no reason, then, to distinguish *Avdich* from the case at bar.

■ Therefore, we hold that the "return receipt requested" provision of section 39.2(b) of the Act reflects the intent of the legislature to require actual receipt of the notice, as evidenced by the signing of the return receipt. As there is no evidence that Pfab or Senator Rigney knew of the contents of the notice and purposefully refused delivery, we express no opinion whether a potential recipient who refuses to sign a receipt of notice may be held to be in constructive receipt of the notice for purposes of the statute. (See *Helland v. Larson* (1985), 138 Ill. App. 3d 1, 4-5.) Because the return receipts at issue in the case at bar were signed after the notice deadline had expired, we find that the notice did not comply with the requirements of section 39.2. Accordingly, we agree with the PCB's determination that the County Board lacked jurisdiction to hear BFI's application.

■ As a final matter, we address the County Board's contention that both BFI and the County Board were denied fundamental fairness by the lack of an opportunity to investigate and rebut the challenge to the timeliness of the notice. The County Board argues that, because "a potential undefined notice problem" was first mentioned to its attorney via a voice mail message at approximately 3 p.m. the day before the hearing, and because the PCB refused to allow the County Board and BFI's requests for additional time and another hearing on the notice issue, the PCB's decision lacked fundamental fairness.

We find no merit to the County Board's argument. It is clear that a void order may be attacked at any time or in any court. (*Fair*

*Employment Practices Comm'n*, 65 Ill. 2d at 112.) Thus, the fact that Carmichael first argued the notice issue at the hearing before the PCB was not improper. Moreover, a reviewing court may not interfere with an administrative agency's exercise of discretion unless it was arbitrary or unreasonable: (*Letourneau v. Department of Registration & Education* (1991), 212 Ill. App. 3d 717, 730.) In this case, BFI offered the return receipt cards into evidence at the County Board hearing. The County Board also argued the notice issue in its brief to the PCB, filed on September 16, 1993. Additionally, the parties filed a stipulation on September 16, 1993, detailing the dates on which the notices to Pfab and Senator Rigney were received by their respective post offices. We cannot say, on this record, that the PCB's decision to deny the County Board and BFI additional time and a further hearing on the notice issue was an abuse of discretion.

For the foregoing reasons, the decision of the PCB is affirmed.

INGLIS, J., concurs.

PRESIDING JUSTICE McLAREN, dissenting:

I believe that the proper interpretation of the clause in question is that the 14-day requirement relates to the mailing of the registered mail and not to actual receipt (service) of the mail. If the majority was correct in requiring service to be effected more than 14 days prior to the filing of the application, the phrase "fourteen days" ought to be located after the phrase "to be served." I agree with Ogle County that the phrase "cause to be served" means that the *mailing* of the letter is the subject of the 14-day requirement because the word "cause" would otherwise have no significance. My interpretation is consistent with the only mention of notice in the legislative debates wherein Senator Demuzio refers to "Notice [not service] provisions to members of the Illinois General Assembly are still embedded in this bill." 82d Ill. Gen. Assem., Senate Proceedings, May 19, 1981, at 169 (statements of Senator Demuzio).

The receipt for the mailing serves several purposes. The receipt establishes to whom, where, and when the notice was sent and indicates when and by whom it is accepted for delivery. The majority is concerned with the hypothetical issue as to what would result if Pfab and/or Senator Rigney had not received notice. In fact both Pfab and Senator Rigney received notice prior to the filing of the petition which is analogous to a defendant in a civil suit receiving the summons before the complaint has been filed. The majority cites no authority directly on point which establishes such early notice as prejudicial, let alone jurisdictional, and I cannot think of any

circumstance that would constitute prejudice in such a time frame or context.

Assuming *arguendo* that the notice provision required actual service 14 days prior to the filing of the petition, I believe that Carmichael does not have standing to raise the failure to personally "serve" Pfab and Senator Rigney. "Standing, however, requires injury to a legally recognized interest. [Citation.] The plaintiff[s] *** do not claim they lacked actual notice *** and, in fact, they participated in the *** hearings before the county board." The notice and hearing provisions do not create a property right where none previously existed. (See *Village of Lake in the Hills v. Laidlaw Waste Systems, Inc.* (1986), 143 Ill. App. 3d 285, 293.) Carmichael attempts to assert the rights of others to show standing but makes no attempt to plead or prove any harm to those others' interests or to his own. Furthermore, I believe Pfab and Senator Rigney have waived any defects relative thereto, Pfab by his general appearance and Senator Rigney by his nonappearance after having received actual notice.

More importantly, Carmichael did not object to the notices at the time the receipts were entered into evidence, and Carmichael himself argued the merits of the siting before the Ogle County board. Having done so, he has waived any and all defects relating to personal jurisdiction. "[A] person cannot, by his voluntary action, invite the court to exercise its jurisdiction and at the same time deny that jurisdiction exists. *** [S]uffice [it] to say that any action taken by the litigant which recognizes the case as in court will amount to a general appearance." *Lord v. Hubert* (1957), 12 Ill. 2d 83, 87.

Most important is the majority's treatment and alteration of an "alleged" defective personal jurisdiction matter subject to waiver into a defective jurisdictional matter not subject to waiver. The majority cites three types of jurisdiction (272 Ill. App. 3d at 192) and then proceeds to equate personal jurisdiction (1) with an agency's scope of authority under the statute (3). The majority does so by citing cases relating to lack of jurisdiction due to defective *publication* and then states, "[a]lthough *Kane County Defenders, Concerned Boone Citizens*, and *BFI* all involved a failure to comply with the publication requirements, and not the individual notice requirements, of section 39.2(b), nothing in the language of the opinions suggests that their holdings are so limited." (272 Ill. App. 3d at 192-93.) I submit that considering the facts in those cases, any discussion regarding personal notification requirements would be speculative *dicta* and that nothing in the language of the opinions suggests that their holdings are so broad! The majority's rationale seems to be that cases relating only to notice by publication did not include *dicta* stating, "by the

way, if this were a defect in personal service it could be waived." The majority's rationale then erroneously determines that since such *dicta* is not present, the alternative, "it could *not* be waived," conclusively follows. (See *Kane County Defenders*, 139 Ill. App. 3d 588; *Concerned Boone Citizens*, 144 Ill. App. 3d 334; *Browning-Ferris Industries*, 162 Ill. App. 3d 801.) The majority's faulty rationale disregards established law regarding defects in publication which cannot be waived, and defects in personal service which can be waived.

Further evidence of the majority's misinterpretation is the reference (272 Ill. App. 3d at 193-94) wherein it cites to *Taylor Coal Co. v. Industrial Comm'n* (1922), 301 Ill. 381. The majority quotes the supreme court's pronouncement that subject-matter jurisdiction is not subject to waiver and then equates that with defective notice by publication. The majority then reverts to its erroneous equation that defects in personal service are the equivalent of defects in publication. Simply put, the majority has disregarded, and by its opinion destroyed, the distinction between personal service and publication, and the distinction between personal jurisdiction and subject-matter jurisdiction!

Finally, I believe both Pfab and Senator Rigney were constructively served when the letter was placed in the mail as the notice provision effectively states that one shall cause another to be served, by mailing not less than 14 days prior to the filing of the petition. (See *Board of Education of North Boone Community Unit School District No. 200 v. Regional Board of School Trustees* (1987), 156 Ill. App. 3d 504, 507 (had notice been given by *certified* or registered mail, then the date of mailing would be controlling).) To interpret the notice provision as the majority has done results in an ironic conclusion never previously reached, *i.e.*, the party to be served can defeat the subject-matter jurisdiction of a tribunal by refusing to accept his mail! Ironically, the majority addresses the issue of constructive service by citing *Avdich*. The majority sees no reason to distinguish *Avdich* from the case at bar (272 Ill. App. 3d at 195-96). Neither do I, considering it was a case involving personal jurisdiction, although in *Avdich* the party to be served did *not* waive service. The majority herein decides there is no constructive service on the basis that the service was a defect of personal jurisdiction. The majority then decides that this personal jurisdiction, contrary to *Avdich*, cannot be waived.

In conclusion, there is nothing incongruous in applying waiver to defects in personal jurisdiction nor in determining standing relative thereto. What is incongruous is allowing the PCB to decide defects in

personal service can be waived in some instances and not in others (*City of Columbia v. County of St. Clair* (April 3, 1986), Ill. PCB Nos. 85—177, 85—220, 85—223 cons.; *Waste Management of Illinois, Inc. v. Village of Bensenville* (August 20, 1989), Ill. PCB 89—28), or can engraft its four-day presumed mailing rule onto the notice provisions contained in the statute. It is additionally incongruous for the majority to apply the law regarding defects in publication to factual situations involving personal service and determining a third party has standing to raise these defects.