LARRY HOLLOWAY *et al.*, Plaintiffs-Appellants, v. WENDY MEYER *et al.*, Defendants-Appellees.

Second District   No. 2—98—1641

Opinion filed March 9, 2000.

Wendell Dixon, Silas Fletcher, and Reuben Taylor, all of Dixon, and Larry Holloway, of Tiskilwa, appellants *pro se*.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Patrick W. Carlson, Assistant Attorney General, of counsel), for appellees.

JUSTICE HUTCHINSON delivered the opinion of the court:
Plaintiffs, Larry Holloway, Wendell Dixon, Silas Fletcher, and Reuben Taylor, were inmates at the Dixon Correctional Center (the

Center). Defendants, Wendy Meyer and Kurt Eubanks, were employees of the Illinois Department of Corrections (the Department). In two separate actions brought pursuant to section 1983 of the federal Civil Rights Act (42 U.S.C.A. § 1983 (West 1994)), plaintiffs alleged that defendants had violated their civil rights when defendants inspected mail addressed to plaintiffs and seized as contraband copies of travel vouchers filed by members of the Prisoner Review Board (Review Board). The trial court granted defendants' motion to dismiss pursuant to section 2—615 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—615 (West 1998)). Plaintiffs appeal, contending that (1) the trial court applied the improper standard to defendants' motion to dismiss, (2) the Department's mail regulations are in conflict with the Freedom of Information Act (5 ILCS 140/1 *et seq.* (West 1998)), and (3) the Department's mail regulations and the seizure of the travel vouchers infringe on plaintiffs' constitutional rights. We affirm.

This matter was originally brought as two separate actions. However, after hearing arguments on defendants' motions, the trial court *sua sponte* consolidated the cases and issued a single memorandum opinion and order dismissing both cases. The individual complaints contained substantially similar allegations; therefore we find it unnecessary to distinguish between them in this opinion.

Each plaintiff alleged that he was incarcerated at the Center. Plaintiffs alleged that defendant Meyer was the mail room supervisor at the Center and that defendant Eubanks was the assistant to the warden. Each plaintiff alleged that he was either a plaintiff in, or anticipated joining as a plaintiff in, a suit filed in federal district court that alleged that the Review Board was not meeting as required by law when deciding parole cases. Plaintiffs alleged that relatives had obtained travel vouchers of Review Board members through Freedom of Information Act requests. Plaintiffs alleged that the travel vouchers were needed as evidence in the federal suit and would establish that, despite the presence of their signatures on Review Board orders, individual Review Board members were not present at Review Board meetings as required by law. Each plaintiff had received a "shakedown record," which indicated that defendant Meyer had confiscated travel vouchers from mail sent to plaintiffs by their relatives. Plaintiffs alleged that defendant Eubanks instructed defendant Meyer to confiscate the travel vouchers and that defendants had acted under the color of state law. Plaintiffs alleged that the confiscations violated their civil rights.

Defendants filed motions to dismiss pursuant to section 2—615 (735 ILCS 5/2—615 (West 1998)). In their motions, defendants alleged that Department regulations permitted them to inspect incoming mail

and withhold from delivery any letter containing information that might result in physical harm to another. Defendants argued that the travel vouchers identified hotels and contained arrival and departure information with dates and times that illustrated a habitual pattern. Defendants argued that the disclosure of this information to inmates created risks to the safety and security of Review Board members.

On August 14, 1998, the trial court heard arguments on defendants' motions to dismiss. On November 23, 1998, the trial court issued its memorandum opinion and order. The trial court held that the Department regulations were facially valid, found that the travel vouchers were contraband, and concluded that the travel vouchers were properly seized. The trial court concluded that plaintiffs' constitutional rights had not been violated by the seizure and dismissed their complaints. Plaintiffs timely appealed.

■ A motion to dismiss that attacks the sufficiency of a complaint raises only legal issues, and our review of an order granting or denying such a motion is *de novo*. *Grund v. Donegan*, 298 Ill. App. 3d 1034, 1037 (1998). To prevail in a section 1983 (42 U.S.C.A. § 1983 (West 1994)) claim, a plaintiff must prove two elements: (1) that the defendant's actions deprived her or him of a federal constitutional right, and (2) that the defendant acted under the color of state law. *Doe v. Calumet City*, 161 Ill. 2d 374, 397 (1994). Defendants do not dispute that they acted under the color of state law. Therefore, the only issue presented is whether defendants' actions deprived plaintiffs of a federal constitutional right.

Plaintiffs first contend that the trial court applied an improper standard to defendants' motions to dismiss. Plaintiffs argue that, because their action was brought pursuant to federal law, federal rules of procedure govern. Defendants counter that, because the action was brought in an Illinois court, Illinois procedural rules apply. Because our review is *de novo*, resolution of this issue also determines the standard by which we will judge the sufficiency of plaintiffs' complaints on appeal.

■ State courts must treat federal law as the law of the land and must remain open to litigants with federal claims on the same basis that they are open to other causes of action. *Howlett v. Rose*, 496 U.S. 356, 372, 110 L. Ed. 2d 332, 350-51, 110 S. Ct. 2430, 2440-41 (1990). However, "[s]tates may apply their own neutral procedural rules to federal claims, unless those rules are pre-empted by federal law." *Howlett*, 496 U.S. at 372, 110 L. Ed. 2d at 351, 110 S. Ct. at 2441. State rules affecting a section 1983 claim are preempted by federal law only if the state rules affect the ultimate disposition of the case. *Johnson v. Fankell*, 520 U.S. 911, 921, 138 L. Ed. 2d 108, 118, 117 S. Ct. 1800, 1806 (1997).

■ A motion to dismiss admits as true all well-pleaded facts whether such motion is brought pursuant to section 2—615 of the Code (735 ILCS 5/2—615 (West 1998)) in the Illinois courts or Rule 12(b)(6) (Fed. R. Civ. P. 12(b)(6)) in the federal system. See *People ex rel. Peters v. Murphy-Knight*, 248 Ill. App. 3d 382, 386 (1993); *Jones v. General Electric Co.*, 87 F.3d 209, 211 (7th Cir. 1996). A section 2—615 motion to dismiss should be granted "only if it appears that [the] plaintiff can prove no set of facts under the pleadings which would entitle [her or] him to the relief sought." *Murphy-Knight*, 248 Ill. App. 3d at 386. A Rule 12(b)(6) motion to dismiss should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations in the complaint." *Jones*, 87 F.3d at 211. The difference, if any, between these two standards is not outcome determinative. To prevail in the present case, plaintiffs must present evidence supporting their claims of a constitutional violation. Pleading requirements affect only the timing of this presentation; they do not change the fundamental nature of the evidence required. Accordingly, we determine that the trial court did not err when it considered plaintiffs' claims under the standards of section 2—615.

Similarly, we will apply the standards applicable to Illinois civil procedure in our review of the trial court's order granting defendants' motion to dismiss. When a reviewing court examines a motion to dismiss pursuant to section 2—615, the question is whether, when viewed in the light most favorable to the plaintiff, the facts alleged in the complaint adequately state a cause of action. *Murphy-Knight*, 248 Ill. App. 3d at 386; see also *Doe*, 161 Ill. 2d at 399 (applying the section 2—615 standard to a section 1983 claim).

■ Plaintiffs next contend that the Department's mail regulations are invalid because they conflict with the Freedom of Information Act (5 ILCS 140/1 *et seq.* (West 1998)). Plaintiffs argue that the Department acted outside its statutory authority when it restricted inmates' access to documents received in response to Freedom of Information Act requests. Plaintiffs' complaints allege only violations of their "due process claims" and "civil rights" and do not clearly identify which federal right is implicated by the Department's alleged failure to follow Illinois statutory law. However, the record below and plaintiffs' arguments on appeal suggest that they base this argument on the due process clause of the fourteenth amendment (U.S. Const., amend. XIV). An administrative agency is a statutory creation and may not act outside the scope of its statutory authority. *Ogle County Board ex rel. County of Ogle v. Pollution Control Board*, 272 Ill. App. 3d 184, 192 (1995). Any action taken outside of that authority is void. *Ogle County*, 272 Ill. App. 3d at 194.

■ The Freedom of Information Act allows any person access to public records for inspection or copying, subject to certain limitations. 5 ILCS 140/3(a) (West 1998). Section 3—7—2(e) of the Unified Code of Corrections (the Corrections Code) (730 ILCS 5/3—7—2(e) (West 1998)) provides "that the Director [of Corrections] may order that mail be inspected and read for reasons of the security, safety[,] or morale of the institution or facility." 730 ILCS 5/3—7—2(e) (West 1998). Where there is an alleged conflict between two statutes, a court has a duty to construe those statutes in a manner that avoids an inconsistency and gives effect to both statutes. *McNamee v. Federated Equipment & Supply Co.*, 181 Ill. 2d 415, 427 (1998). Where both specific and general provisions relating to the same subject exist, whether contained in a single act or in separate acts, the specific provision controls and should be applied. *People v. Villarreal*, 152 Ill. 2d 368, 379 (1992).

Plaintiffs argue that, because the Freedom of Information Act allows "any person" access to public records, the Department may not limit their access to any record received as the result of a Freedom of Information Act request. We disagree. There is no patent conflict between the plain language of these statutory provisions. The Freedom of Information Act creates a general right of access to public records and includes no specific limitation on an inmate's ability to exercise this right. See 5 ILCS 140/3 (West 1998). The Corrections Code authorizes the Department to inspect inmate mail for materials affecting security or safety whether or not such material is otherwise available to the public. 730 ILCS 5/3—7—2(e) (West 1998).

■ A potential conflict between these statutes occurs when, as in this case, material obtained through a Freedom of Information Act request is mailed to an inmate and subsequently determined to be contraband. We determine that, in such a case, the provisions of the Corrections Code are more specific because they do not apply to all public records and affect only those public records that are mailed to inmates. Moreover, only those records deemed to affect safety, security, or morale are subject to regulation. See 730 ILCS 5/3—7—2(e) (West 1998). Because the Corrections Code contains more specific provisions, it applies to the extent it conflicts with the Freedom of Information Act. See *Villarreal*, 152 Ill. 2d at 379. Because the Freedom of Information Act is not controlling in this context, we need not discuss the parties' additional arguments regarding the application of that act to the Review Board and its members' travel vouchers. We conclude that the Department did not exceed its statutory authority when it implemented regulations restricting inmate mail, including records received in response to a Freedom of Information Act request.

Therefore, we conclude that the alleged conflict between the Department's mail regulations and the Freedom of Information Act cannot form the basis of a constitutional violation.

Plaintiffs finally contend that the trial court erred when it determined that they did not have a constitutional right to possess the travel vouchers in prison. Again plaintiffs' complaints do not clearly identify the constitutional rights allegedly implicated by the seizure, but it appears that their argument is based on a violation of their rights of free speech and due process guaranteed by the first and fourteenth amendments (U.S. Const., amends. I, XIV).

■ The principle underlying our analysis is that "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84, 96 L. Ed. 2d 64, 75, 107 S. Ct. 2254, 2259 (1987). When the constitutionality of a prison regulation is challenged, "the relevant inquiry is whether the actions of prison officials were 'reasonably related to legitimate penological interests.' " *Thornburgh v. Abbott*, 490 U.S. 401, 409, 104 L. Ed. 2d 459, 470, 109 S. Ct. 1874, 1879 (1989), quoting *Turner*, 482 U.S. at 89, 96 L. Ed. 2d at 79, 107 S. Ct. at 2261. The *Turner* court identified four factors relevant to this inquiry: (1) whether there is a valid rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the asserted rights that remain open to prison inmates; (3) whether the accommodation of the asserted rights will have an impact on guards and other inmates and on the allocation of prison resources; and (4) whether there are ready alternatives to the challenged regulation. *Turner*, 482 U.S. at 89-91, 96 L. Ed. 2d at 79-80, 107 S. Ct. at 2262. However, this analysis must recognize that the courts are ill equipped to deal with the increasingly urgent problems of prison administration, and the difficult judgments concerning institutional operations should be made by prison administrators, not the courts. *Turner*, 482 U.S. at 89, 96 L. Ed. 2d at 79, 107 S. Ct. at 2261-62.

In the present case, plaintiffs argue that the Department regulations for handling mail are overly broad and vague and give too much discretion to the employees handling the mail. Department rule 525.140(g) allows Department officials to spot-check incoming, non-privileged mail and withhold from delivery mail that is a threat to security or safety. 20 Ill. Adm. Code § 525.140(g) (1996). Rule 525.130(h) provides nine examples of mail that would pose a threat to security or safety, including a letter containing "information which, if communicated, might result in physical harm to another." 20 Ill. Adm. Code § 525.130(h)(7) (1996). In *Gaines v. Lane*, 790 F.2d 1299 (7th Cir.

1986), the reviewing court examined an earlier version of these regulations and concluded that the regulations gave prison officials and employees sufficient guidance in determining what mail can be censored and were not overly broad. *Gaines*, 790 F.2d at 1305.

Although *Gaines* was decided prior to *Turner*, we find its reasoning remains persuasive and would be consistent with the four-part *Turner* analysis. More importantly, however, it is unnecessary to determine whether the Department mail regulations are facially unconstitutional. Plaintiffs alleged only that the confiscation of the travel vouchers violated their constitutional rights, and they sought relief based solely on that seizure. Plaintiffs neither alleged that the Department mail regulations violated their constitutional rights when applied to other types of mail nor asked the trial court to enjoin, or otherwise restrict, the general application of those regulations. Accordingly, we need only examine the narrower issue of whether the confiscation of the travel vouchers violated plaintiffs' constitutional rights.

The first *Turner* factor is whether the challenged prison regulation bears a valid rational connection to the legitimate governmental interest put forward to justify it. *Turner*, 482 U.S. at 89, 96 L. Ed. 2d at 79, 107 S. Ct. at 2262. In this case the interest asserted is the safety and security of Review Board members, and the challenged regulation prevented plaintiffs from receiving detailed information regarding their travels on official business. Review Board members are responsible for determining, among other things, prisoner eligibility for parole, Department requests for the revocation of good-conduct credits, and inmate requests for pardons, reprieves, or commutations. See 730 ILCS 5/3—3—2 (West 1998).

Plaintiffs argue that the travel vouchers do not pose a threat to safety or security because they reflect only nonhabitual, past activities of the Review Board members and that much of the information contained in the travel vouchers is already well known to inmates. If plaintiffs are correct, access to the vouchers would pose only a small risk to the safety and security of the prison. However, the question of how much risk is acceptable should be decided in the first instance by the individuals responsible for operating prisons, not by the courts. *Keeny v. Heath*, 57 F.3d 579, 581 (7th Cir. 1995). When the concerns identified by correctional officials are plausible, the courts should not lightly interfere. See *Keeny* 57 F.3d at 581.

We find the concerns raised by defendants in this case are plausible. A prisoner could glean from the confiscated travel vouchers whether a Review Board member routinely stayed overnight either before or after visiting a particular institution and whether that

member routinely used the same hotels. This information could potentially be used to harass, intimidate, or threaten Review Board members either in an attempt to influence future decisions or in retaliation for previous unfavorable decisions. We cannot determine with precision from the record before us either the full potential for harm created by inmate access to the travel vouchers or the likelihood that an inmate would act against Review Board members. However, Department officials are in a far better position to determine the magnitude of these risks, and Department officials should be allowed to make the initial determination that these risks warrant a response. Therefore, we conclude that the seizure was rationally connected to a valid governmental interest, *i.e.*, the safety and security of Review Board members.

The second *Turner* factor examines whether alternative means of expressing the asserted rights remain available. *Turner*, 482 U.S. at 90, 96 L. Ed. 2d at 79, 107 S. Ct. at 2262. Plaintiffs argue that the travel vouchers are necessary to prove that Board members are not meeting in accordance with the law. However, plaintiffs do not require the travel vouchers themselves; they require only the information the travel vouchers contain regarding the arrival and departure times of certain Review Board members on certain days. Alternative means exist for obtaining this information. For example, plaintiffs enlisted family members outside the prison system to obtain the vouchers. Those same family members could have provided plaintiffs with a summary of the vouchers that indicated only whether a Review Board member was present in the city where a meeting was held at the day and time of that meeting, without revealing if that member stayed in a particular hotel either before or after the meeting.

Plaintiffs argue that all alternatives to possessing the vouchers in prison are unacceptable because the vouchers themselves are necessary as evidence in their federal lawsuit. However, plaintiffs have available a number of methods for establishing the facts contained in the travel vouchers that do not require the possession of the vouchers themselves. For example, plaintiffs could use the discovery process, interrogatories, or requests to admit to establish that a particular Review Board member was not present at the place and time indicated in a Review Board decision. Even if plaintiffs needed to introduce the vouchers themselves as evidence in their federal suit, alternatives exist to allowing plaintiffs access to the vouchers inside the prison. These documents could be held by an attorney or filed directly with the court and used subject to a protective order. We need not, and have not attempted to, identify which alternatives best accommodate plaintiffs' rights. However, we are confident that, if required to, trial

courts in both the state and federal systems are capable of crafting solutions that properly balance inmates' rights of access to the courts with the Department's interest in safety and security. We conclude that, despite the confiscation of the travel vouchers, plaintiffs retained alternative methods of exercising their constitutional rights.

The third *Turner* factor considers the impact that the accommodation of the asserted right would have on guards, other inmates, and the allocation of prison resources. *Turner*, 482 U.S. at 90, 96 L. Ed. 2d at 79-80, 107 S. Ct. at 2262. We determine that allowing plaintiffs to possess these travel vouchers inside the prison would impose too heavy a burden on guards and the prison system in general. If plaintiffs were allowed access to the vouchers, Department officials would be forced to closely monitor plaintiffs and their communications with individuals outside the prison to ensure that the information contained in the travel vouchers was not used to harass, intimidate, or plan an attack against Review Board members. Department officials would also be forced to monitor plaintiffs' interactions with other inmates to ensure that the information contained in the vouchers was not transmitted to other inmates who might use that information to threaten the security or safety of Review Board members. The Department or the Review Board would also face the burden of providing Review Board members with additional security when they traveled on Review Board business. Therefore, we conclude that the accommodation of plaintiffs' asserted rights would place an undue burden on guards and prison resources.

The final *Turner* factor considers whether alternatives to the challenged regulation exist. *Turner*, 482 U.S. at 90-91, 96 L. Ed. 2d at 80, 107 S. Ct. at 2262. The absence of alternatives suggests that a regulation is reasonable, and the presence of obvious, easy alternatives suggests that the regulation is an exaggerated response. *Turner*, 482 U.S. at 90-91, 96 L. Ed. 2d at 80, 107 S. Ct. at 2262. However, this is not a least restrictive alternative test, and prison officials do not have to demonstrate that they have considered and rejected every possible alternative. *Turner*, 482 U.S. at 90-91, 96 L. Ed. 2d at 80, 107 S. Ct. at 2262. In this case, readily available alternatives do not exist. Although the Department could censor the travel vouchers and delete sensitive information, the burden on prison resources created by such item-by-item censorship supports the conclusion that censorship is not a readily available alternative to withholding the travel vouchers. See *Turner*, 482 U.S. at 93, 96 L. Ed. 2d at 81, 107 S. Ct. at 2263-64 (upholding a ban on correspondence between inmates in different institutions and rejecting censorship as an alternative). We determine that the seizure of the travel vouchers was reasonable in light of a le-

gitimate penological interest and did not represent an exaggerated response.

After examining the *Turner* factors, we conclude that the seizure of the travel vouchers in the present case was rationally related to a legitimate penological interest and did not violate plaintiffs' constitutional rights. See *Thornburgh*, 490 U.S. at 409, 104 L. Ed. 2d at 470, 107 S. Ct. at 1879. Because plaintiffs cannot establish, from the facts alleged in their complaints, that their constitutional rights were violated, their complaints fail to state a cause of action under section 1983. Therefore, the trial court properly granted defendants' motions to dismiss.

For the foregoing reasons, the judgment of the circuit court of Lee County is affirmed.

Affirmed.

INGLIS and THOMAS, JJ., concur.